AGNES R. THOMPSON *vs*. CAMBRIDGE GAS LIGHT COMPANY.
JOHN W. THOMPSON *vs*. SAME.

Middlesex.   January 14, 1909. — February 24, 1909.

Present: KNOWLTON, C. J., MORTON, LORING, & BRALEY, JJ.

*Negligence*, Of gas company.   *Gas Company*.

At the trial of an action against a gas company for injuries alleged to have been received by the plaintiff, a woman, by reason of her having inhaled gas which had escaped from the defendant's pipes through its negligence and had permeated through the soil into the house where the plaintiff lived, there was evidence tending to show that the plaintiff noticed a bad odor in her room in the morning when she awoke which kept growing worse during the day, that she never had used illuminating gas and did not know how it smelled, that she did not know what caused the odor which she smelled when she inhaled it, and that during the day she became nauseated and finally for a time unconscious and had to leave the house. The defendant was not notified of the escape of gas until the return of the plaintiff's husband in the evening. *Held*, that there was evidence from which the jury were warranted in finding that the plaintiff exercised due care.

At the trial of an action against a gas company for injuries alleged to have been received by the plaintiff by reason of his having inhaled gas which had escaped from the defendant's pipes because of negligence on its part and had permeated through the soil into the plaintiff's house, there was evidence tending to show that the plaintiff noticed a bad smell in the morning and that the possibility of an escape of illuminating gas occurred to him, but that he did not think the smell was that of illuminating gas and did not pay much attention to it; that he was away from the house during the day, and that, when he returned at night he noticed that the odor was very much worse and immediately took steps to have the matter attended to. *Held*, that the question of the plaintiff's due care was for the jury.

It is the duty of a gas company which conducts its gas through underground pipes to see that the pipes are laid in the ground at a suitable depth and in a suitable manner and are kept in proper repair; and if, at the trial of an action against a gas company for injuries alleged to have been received by the plaintiff by reason of his having inhaled gas which had escaped from the defendant's pipes because of negligence on its part and had permeated through the soil into the plaintiff's house, there is evidence that the gas which caused the plaintiff's injury had escaped from a break in a pipe twenty feet from the house, and that the pipe was "cracked all the way around sufficiently to admit a case knife," that the pipe had been laid three feet and six inches deep in made land filled with dirt and ashes eight years before the alleged injury to the plaintiff, and that the weather was so cold that the frost was in the ground to the depth of three feet; and a foreman of the defendant, called by the plaintiff, testifies that in his opinion the pipe was caused to break by the contraction due to the cold weather and that he "knew of no other cause why the pipe should break," the questions, whether the defendant had performed its duty, and whether the breaking of

the pipe was due to causes beyond its control or which could not reasonably have been anticipated by it, or was due to negligence on its part, were for the jury.

Two ACTIONS OF TORT for damages alleged to have been received by the respective plaintiffs on January 12, 1904, by reason of their inhaling gas which had escaped from the defendant's pipes because of negligence on its part. There were other counts in the declaration in the second action which are described in the opinion. Writs in the Superior Court for the county of Middlesex dated January 16, 1904.

The cases were tried together before *Hardy*, J. The plaintiff in the first case testified that she went to bed on the night of January 11 feeling well; that she woke at six o'clock on the morning of January 12, feeling nauseated. She noticed a bad odor in the room but did not know what it was. She testified that she was thirty-five years old, had never used illuminating gas and did not know what it smelled like. She did not know what the odor was and did not think of its being illuminating gas. She got up and vomited and went back to bed again. She was up and down through the morning, feeling very sick. The odor kept growing worse during the day. At some time in the afternoon she became unconscious and was unconscious for some time. When she came to, she staggered to the door and then went across a field to her mother's, who lived near by. It was very cold and she put snow to her head. This was about five o'clock in the afternoon. Soon afterwards she returned with her sister to the house.

The testimony of the plaintiff in the second case is stated in the opinion.

Besides testifying as stated in the opinion, the defendant's foreman testified that the pipe was comparatively new, having been laid in 1896 and so laid that it was three feet six inches from the top of the pipe to the surface of the street; that it was very cold at that time and that the frost was in the ground to the depth of three feet; that in his opinion the pipe was caused to break by the contraction due to the cold weather and that he knew of no other cause why the pipe should break; that the land where the pipe was laid was made land filled with dirt and ashes, and that through this gas would filter more

readily than through clay, but not so readily as through sand or gravel, and that, with the soil frozen as it was, if a pipe broke the tendency of the gas would not be to rise through the frozen soil but to percolate sideways until it reached some such place as a cellar.

Other facts are stated in the opinion.

The jury found for the plaintiffs; and the defendant alleged exceptions.

*H. Bancroft,* (*W. Shuebruk* with him,) for the defendant.

*D. L. Smith,* for the plaintiffs.

MORTON, J.   These are actions of tort to recover damages for injuries alleged to have been caused by gas, escaping from the pipes of the defendant company.   The two actions were tried and argued together.   The action by the female plaintiff is for personal injuries.   The other action is by her husband, the declaration being in three counts, the first for personal injuries to himself from gas poisoning, the second for loss of his wife's services, and the third for the loss of services of a minor child. The presiding judge instructed the jury that if they found for the husband on the first count in his declaration the damages should be nominal, and directed the jury to return a verdict for the defendant on the third count.   The jury found for the plaintiff in each case.   The cases are here on exceptions by the defendant to the refusal of the presiding judge to direct a verdict for the defendant in the action by the female plaintiff and to his refusal to direct a verdict for the defendant on the first and second counts in the action by the husband.

We think that the refusals to give the rulings requested were right.   It could not be ruled as matter of law that the plaintiffs were not in the exercise of due care.   The female plaintiff testified that she had never used illuminating gas, did not know how it smelled and did not know what caused the odor.   If she did not know that it was illuminating gas that caused the odor she clearly was not at fault in not notifying the defendant.   Whether she could or should have done anything else to remedy the condition that had arisen and was in the exercise of due care in remaining in her tenement as she did, was plainly for the jury. The husband testified that though he noticed in the morning a bad smell and the possibility of illuminating gas occurred to him,

he did not think it was really that, and did not pay much attention to the smell. When he returned at night the odor was very much worse, and he took steps at once to have the matter attended to. In his case also, the question whether he was or was not wanting in due care was for the jury.

There would seem to have been no doubt that the odor was due to the presence of illuminating gas in the tenement. The defendant's foreman so testified. And the jury were warranted in finding that the gas came from a pipe in the street about twenty feet from the house which was found " cracked all the way around sufficiently to admit a case knife." The defendant contends that there was no evidence of negligence on its part and that the break in the pipe was caused " by the contraction due to the cold weather " as its foreman testified. But the jury might properly have found, and for aught that appears did find, that the pipe would not have cracked in the manner in which it did if it had been properly laid, and that if it had been laid deeper it would not have been affected by the cold weather, and that it should have been laid deeper. It was the defendant's duty to see that the pipe was " laid in the ground at a suitable depth and in a suitable manner, and kept in proper repair." *Smith* v. *Boston Gas Light Co.* 129 Mass. 318, 321. And it was for the jury to say upon all of the evidence whether the defendant had performed that duty and whether the breaking of the pipe was due to causes beyond its control or which could not reasonably have been anticipated by it, or whether it was due to negligence on its part. *Smith* v. *Boston Gas Light Co., ubi supra.* *Greaney* v. *Holyoke Water Power Co.* 174 Mass. 437. *Gould* v. *Winona Gas Co.* 100 Minn. 258.

*Exceptions overruled.*