## BARAY v. ESCOBEDO et al. (No. 1558.)

(Court of Civil Appeals of Texas. El Paso. Jan. 17, 1924. Rehearing Denied March 27, 1924.)

**1. Death ⬠52—Pleading held to show pecuniary loss to children.**

The allegation of the petition in an action for the death of plaintiffs' mother, that "plaintiffs have suffered the loss of their mother and her aid and assistance," held sufficient, in the absence of special exception to permit proof that the mother had contributed pecuniarily to them.

**2. Death ⬠77—Evidence held to sustain recovery for death of mother.**

In an action for the death of plaintiffs' mother, proof that she had attended to the household duties for plaintiffs, and that such services were of a stated value, held sufficient to support a verdict and judgment for actual damages in favor of plaintiffs, her adult children.

**3. Landlord and tenant ⬠169(11)—Contributory negligence of one falling through hole in balcony floor held for jury.**

Contributory negligence of plaintiffs' decedent, killed when she fell through a hole in an upstairs balcony in front of a door to her apartment, owned by defendant, held, under the evidence, for the jury.

**4. Death ⊚⇒76—Proof held to show death resulted from injuries from fall.**

Proof that plaintiffs' decedent fell through a hole in a balcony to cement below, did not speak again, and died shortly afterwards, *held* sufficient proof that death was the direct result of the injuries received from the fall.

**5. Death ⊚⇒77—Introduction of mortality tables not necessary to establish life expectancy.**

In an action for the death of plaintiffs' mother, it is not necessary, in order to recover for loss of services, to introduce mortality tables as to her life expectancy, the jury being entitled to determine this by her age and physical condition.

**6. Death ⊚⇒99(4)—$1,500 for death of 65 year old mother held not excessive.**

$1,500 damages for the death of plaintiffs' 65 year old mother who had lived with them and performed household duties for them which were of the value of $10 per week *held* not excessive.

**On Rehearing.**

**7. Master and servant ⊚⇒330(1)—Burden of showing carpenter making repairs independent contractor held on owner of building.**

In an action against the owner of a building for the death of plaintiffs' mother resulting from a fall through a hole in a balcony floor during the course of repairs, where the evidence established that the carpenter making such repairs was doing so for the owner, the burden was upon defendant to rebut the prima facie case thus made by showing that the carpenter was an independent contractor.

**8. Master and servant ⊚⇒332(1)—Evidence held not to conclusively establish carpenter making repairs was independent contractor.**

Evidence *held* insufficient conclusively to establish that a carpenter making repairs on a balcony floor was working as an independent contractor, so as to justify a peremptory instruction for the owner.

Appeal from District Court, El Paso County; Ballard Coldwell, Judge.

Action by Jose Maria Escobedo and another against Pablo Baray. Judgment for plaintiffs, and defendant appeals. Case held for further consideration, with permission to file amended or supplemental motion for rehearing.

Croom, Goldstein & Croom and Isaacks & Lattner, all of El Paso, for appellant.

W. J. Bryan and Folsom & Zachary, all of El Paso, for appellees.

HARPER, C. J. Appellees, Jose Maria Escobedo and Antonio Silva, sued appellant, Pablo Baray, for damages on account of the death of their mother, whose death, they alleged, was caused by the negligence of appellant, in that he was the owner of the building in which appellees and their mother occupied rooms opening onto a balcony, and on or about October 29, 1922, appellant carelessly and negligently removed some of the floor from said balcony, leaving a large hole in front of the door leading from a room occupied by deceased, and, without any knowledge of said hole or the danger incident thereto, deceased stepped from the door and fell through the hole to the ground beneath, and was greatly injured, from which injury she died. Appellees further alleged that by reason of the negligence of appellant "plaintiffs have suffered the loss of their mother and her aid and assistance," and laid their damages at $10,000.

Appellant answered by general demurrer, general denial, and a special plea of contributory negligence on the part of the deceased.

Verdict and judgment for $1,500. Appealed.

[1] First. The allegation, "plaintiffs have suffered the loss of their mother and her aid and assistance," is sufficient, in the absence of special exception seasonably urged and acted upon by the court, to permit the proof that the mother contributed pecuniarily to them.

[2] And the fact that the mother, deceased, attended to the household duties, and that such services were of the value of $10 per week, are sufficient to support a verdict and judgment for actual damages in favor of her adult children. Missouri, K. & T. Ry. Co. v. Butts, 62 Tex. Civ. App. 539, 132 S. W. 88.

The evidence discloses that the plaintiffs, Jose Maria Escobedo and Antonio Silva, were the only living children of deceased; that they were living together upon the upstairs floor of a building owned by the defendant, Pablo Baray; that there was a balcony extending entirely around the building outside this floor, and that a door opened out onto it from the rooms so occupied; that a carpenter employed to repair this balcony by defendant, had taken up a number of planks in front of the door in question, thus leaving an opening through the floor, and that the deceased stepped out of their door and fell through this opening to the ground, and died a short time thereafter.

[3] Second. It is urged that the uncontradicted evidence shows that the deceased was guilty of contributory negligence which was the proximate cause of the accident, and for that reason no recovery can be had. In support of this appellant quotes the following from the testimony of the carpenter who removed the planks:

"The opening was not directly in front of this woman's door; it was a little to one side. About 8 inches of the opening was directly in front of her door. I had conversation with the woman that fell through there at the time. She was inside of the door—the screen door, and I was on the outside. She asked me if I was going to take it all down, and I told her, 'No.' only that portion of the balcony. I warned her of the condition of the floor, and she knew

about it, because I told her before. She was there when I commenced to take up the old boards. We were talking about the work going on there and taking up the boards, and I turned around, and then she came out and fell through."

On cross-examination, he testified:

"I told this woman again I was going to take up those boards, and I took the boards up. She was standing at the door talking to me when I took the boards up. She knew I had taken the boards up."

In this respect appellant asserts, in argument, that this witness had no interest in the result of the suit, nor was there any testimony to contradict or impeach his statement, and that for such reason it constitutes proof of facts in support of his plea of contributory negligence. There is testimony which, when followed to its ultimate analysis is a direct and positive refutation of this witness' testimony. For instance, three of the other parties living in rooms adjacent to the work being done testified that they had not been notified of the work, nor warned of the danger. A witness who lived next door, and who had no interest in the result of the suit, testified.

"I know that old lady that was killed. * * * I saw her come to the door with a quilt in her hand, and then just disappear. It was her custom going out every morning and hanging the quilts in the sun on the balcony. I ran to the fence to see what had become of her, and she was laying on the cement, * * * helped to carry her in the house," etc.

These circumstances are sufficient to contradict the evidence of the carpenter, and to constitute it a question for the jury to determine under the facts, especially in view of the fact that the carpenter might be personally liable for damages under the facts revealed by this record, and for this reason the jury could properly have discarded his testimony.

Third. It is urged that the carpenter was an independent contractor, and for that reason appellant cannot be held in damages therefor. This theory was not pleaded, nor was such an issue submitted or requested to be submitted so the rule that "litigants are restricted to the theory upon which the cause was prosecuted or defended in the court below" is applicable here. Boatner v. Providence W. Ins. Co. (Tex. Com. App.) 241 S. W. 136.

[4] Fourth. The evidence is that the deceased fell on the cement, and did not speak afterward, and died shortly thereafter, so there is nothing in the proposition that there is no direct evidence that the mother died as a result of the injuries received as a result of the fall.

[5] Five and seven are that "the evidence is insufficient to support the verdict in that there is no direct evidence of her age or life expectancy," and that the verdict is excessive. The evidence is as to age of deceased sufficient for the jury to have found it to be 65 years, and it was not necessary to introduce mortality tables as to life expectancy, as the jury may determine this by the age and physical condition of deceased. Gulf, C. & S. F. Ry. Co. v. Compton, 75 Tex. 667, 13 S. W. 667.

[6] A verdict and judgment for $1,500 is not excessive under the facts of this record.

Finding no error, the cause is affirmed.

### On Rehearing.

HIGGINS, J. We are of the opinion that the reason assigned in the main opinion for overruling appellant's proposition to the effect that the carpenter Meraz was an independent contractor is perhaps unsound. It was incumbent upon the plaintiffs to show that Meraz was the servant of appellant, and it was perhaps permissible for appellant to rebut this under the general denial by showing that the carpenter was an independent contractor. In any event we prefer to base our ruling upon another ground which is regarded as conclusive.

The proposition is that:

"The uncontroverted and unimpeached evidence showing that the negligence, if any, in making the hole in the balcony floor, was the act of an independent contractor, and not the act of appellant, his agents, or employees, and appellant cannot be held in damages therefor,"

—and is submitted under an assignment complaining of the refusal of a peremptory instruction to find for the defendant, and another assignment that the undisputed evidence shows that Meraz was an independent contractor.

[7] The evidence discloses that Meraz was repairing the building for its owner, Baray. The presumption thereupon arose that Meraz was appellant's servant, and it became incumbent upon appellant to rebut the prima facie case thus made by showing that Meraz was an independent contractor. Ry. Co. v. Warner, 88 Tex. 642, 32 S. W. 868; Kampmann v. Rothwell (Tex. Civ. App.) 107 S. W. 120.

[8] In order to do so it was necessary for appellant to prove that under the contract of employment the details of the work to be done were completely within the discretion and control of Meraz, and that the latter was responsible to Baray only as to the result of the work done.

The evidence relied upon by appellant as showing such status, as quoted in the motion for rehearing, is as follows:

Baray testified as follows:

"I sent a man over there to tear up that balcony, I made a contract with a carpenter. I was not there when the woman fell through and killed herself. * * * I made a contract with the carpenter to give him the lumber, and

to pay him $7 to cover up whatever was defective. That contract was in writing. I have a receipt for the contract; my attorney has the contract. I have the receipt where it was paid."

Eduardo Meraz, the carpenter, testified:

"I am a carpenter and have been about 18 years. I was engaged as a carpenter in October, 1922. On or about the 27th or 28th of October, I was working on the corner of Eighth and Florence streets on a white brick building. I was working for Mr. Baray. I was making some repairs for him. I arranged with Mr. Baray to do the work by contract. I have not a copy of that contract; I have only the receipt for the work. * * * I was putting down some new lumber in the floor and in order to do that I had to remove the old pieces or boards. At the time the woman fell through there was an opening in the floor of approximately 3 feet. * * *"

On cross-examination, he testified:

"I have worked for Pablo Baray some two years off and on when he had work. Whenever he had some work he had me work for him. I was the carpenter that was sent down by Baray to fix the balcony at the place where this woman was killed. I notified everybody in the place that I was going to take up the balcony. Everybody knew it. * * * The new lumber was up on the balcony. I was cutting the lumber at the time this woman fell through. * * * I am not friendly to Mr. Baray. I work for him. I made a contract for fixing up the balcony down there, and Mr. Baray furnished the lumber. He owns the building. He sent me around there to do the work."

On redirect examination, he stated:

"I agreed to do the whole job for $6. I now work at Ft. Bliss in the construction, and have worked for the Anderson Investment Company and as foreman for the government. When I did this work I did it on the understanding that I was to get $6 for it. Mr. Baray was not there at the time of the accident. I was getting $6 regardless of how much time I consumed."

On recross-examination, he stated:

"Baray sent me over to repair the balcony just as he has done on many of his other properties. I went over and did this work, and he paid me $6 for it. I had the agreement to do the work for $6 before I commenced."

While Baray testified that the work was done under a written contract, no such contract was offered in evidence, and if in fact such contract existed it was executed after the injury. This is shown by Baray's testimony, as follows:

"This is the receipt I turned over to the carpenter. This is the only receipt I ever got from him. Every time he works I get a receipt from him. I had a contract with him before the work was done."

Cross-examination:

"This shows to be a contract. The carpenter wrote this. It was made several days after this woman was killed, when he came to settle up. This is what I referred to as the contract."

If we were disposed to do so, our ruling might well be based upon the proposition that there was a written contract which evidenced the true relation existing between the carpenter and appellant, and that appellant failed to offer the same in evidence or otherwise prove its terms, and thus wholly failed to rebut the prima facie case made by appellee, but the reasonable deduction to be drawn from all the evidence is that there was in fact no written contract between the parties for the work, and the written contract referred to by Baray was simply a receipt given by the carpenter after the work was done for the money paid by Baray.

The question then is, Does the quoted evidence conclusively show that under the contract of employment Meraz became an independent contractor? In our opinion it is silent upon the controlling issue in determining the status between the parties. It simply shows that Baray employed Meraz to do some repair work upon the house, agreeing to furnish the necessary lumber and pay either $6 or $7 for the work done. It is wholly silent as to whether Baray reserved any right to direct or control the manner in which the repairs were to be made. From, the evidence it cannot be definitely ascertained whether he did or did not, and in our opinion appellant failed to meet the burden of rebutting the prima facie case made against him. Certainly it cannot be said that such evidence conclusively establishes that the carpenter was an independent contractor in making the repairs so as to justify a peremptory instruction in appellant's favor upon such theory or that this court would be warranted in holding that such evidence conclusively established that the carpenter occupied such status.

The motion for rehearing is passed for further consideration and appellant is granted 15 days in which to file an amended or supplemental motion for rehearing if he desires so to do; leave to file same being hereby granted.