# CHARLESTON.

JOHN GILLESPIE, *Admr., etc., v.* MONARCH CARBON COMPANY

### (No. 5219.)

Submitted February 3, 1925.    Decided March 17, 1925.

1.    GAS—*Whether Gas Meter Causing Fire Resulting in Death Was Installed Under Authority or With Consent of Defendant in Action for Damages a Question for the Jury.*

The defendant, engaged in the production and sale of natural gas, entered into a written contract with a coal mining company whereby the former was permitted to sell gas to the employees of the latter, in consideration of which and the agreement of the coal company to collect and guarantee payment of the purchase price therefor, the defendant agreed to pay the coal company certain remuneration based upon the amount of gas sold and delivered under the privilege. The contract required the defendant to lay the main gas lines and furnish and maintain correct meters and service connections for each dwelling and other buildings where gas was to be used. Thereafter a person in the employ of the coal company, but who looked after the gas lines and installed meters to measure gas sold by the defendant, installed beneath the floor of a house owned by the coal company and occupied by the plaintiff as its tenant and employee a meter to measure gas sold him by the defendant pursuant to the contract. In this action, brought to recover damages for the death of the plaintiff's infant child caused by a fire which consumed the house so occupied by him, and resulting from alleged defects in the meter or its imperfect connection with the gas pipe, under the facts and circumstances detailed it was a question for the jury to determine whether the meter was installed under the authority or with the consent of the defendant.    (p. 482).

2.  SAME—*Whether Gas Meter Caused Fire Resulting in Death
    and Defense of Contributory Negligence Questions for Jury.*

    Whether the fire was due to the escape of gas from the
    meter or its connections with the gas pipe, as well as the
    defense of contributory negligence, under the facts and cir-
    cumstances of the case were questions for the jury (p. 484).

Error to Circuit Court, Fayette County.

Action by John Gillespie, Administrator, etc., against Mon-
arch Carbon Company.

Judgment for defendant, and plaintiff brings error.

*Reversed and remanded.*

*John Gillespie* and *C. W. Dillon,* for plaintiff in error.
*Hubard & Bacon,* for defendant in error.

LITZ, JUDGE:

The plaintiff prosecutes error to the judgment of the circuit
court of Fayette county upon an instructed verdict for the
defendant. As administrator of the estate of his infant
daughter, Mary Freda, he seeks to recover damages for her
death, resulting from the alleged negligence of defendant.
She and her twin sister, Martha Beda, seven months of age,
were burned to death December 22, 1921, in a fire which con-
sumed the house occupied by the plaintiff and his family at
Carbondale, Fayette county.

The defendant, Monarch Carbon Company, a corporation,
produces and sells natural gas in this State. On the 13th
of November, 1921, it entered into a written contract with
the Kanawha & Hocking Coal & Coke Company, a coal mining
corporation, operating plants at Cedar Grove, Carbondale,
Longacre and Harwood, Fayette county, whereby the coal
company permitted the sale of gas to its employees by the
defendant, and agreed to collect and guarantee payment of
the purchase price therefor; in consideration of which con-
cession, guarantee and service by the coal company the de-
fendant agreed to pay it three and one-half cents per thousand
cubic feet of gas so furnished. The contract required the gas

company "to lay the main (gas) line along or near the lead-ing highway through the towns above mentioned, to furnish service connections in the road opposite the various houses, and to furnish and maintain correct meters at service con-nections for each dwelling and other buildings where gas is used."

The house in which deceased lost her life was one of a number which the coal company owned and rented to its employees at Carbondale. The plaintiff, an employee of this company, moved into it about November 1, 1921. From that time until about December 10th gas was furnished to the plaintiff by the defendant at a flat rate charge. A meter was then installed beneath the floor of the house, which contained only two small rooms about twelve feet square. A few days later gas escaping from the meter, or its connections with the gas pipe, took fire. Gas continued to escape at this point. The meter was aflame at the time the burning of the house was discovered. The fire started about eight o'clock in the morning, after the plaintiff had gone to his work and while his wife was at her father's home fifty or sixty feet away. She had left the two babies alone in the house. It is the theory of the plaintiff that gas escaping from the meter penetrated the house through openings in the floor and ignited from an open flame of a gas heater in one of the rooms.

The acts of negligence imputed to defendant are the in-stallation and maintenance of a defective or imperfectly at-tached meter, whereby gas escaped and set fire to the house. The defendant denies liability on three grounds: (1) that it is not responsible for the defective meter, or imperfect con-nections; (2) that the fire was not the result of escaping gas; and (3) that the plaintiff, sole distributee of deceased, and the mother, custodian of the child, were guilty of negli-gence in failing to guard against the known and threatened danger, causing death, which bars the right of recovery.

There is no direct proof that the defendant authorized or knew of the installation of the meter. This situation consti-tutes the basis of the first ground of defense. The evidence shows that the meter was installed by one, Osborne, who, al-

though in the employ of the coal company, looked after the gas lines and installed gas meters at Carbondale to measure gas furnished by the defendant. In view of these facts and the contract of November 13, 1921, whereby the coal company and the defendant for their mutual benefit entered into the joint undertaking of supplying the employees of the former with gas, the defendant assuming the duty of furnishing and maintaining proper meters; and considering the further fact that the meter in question was installed for the benefit of the defendant, the jury, if permitted, could well have inferred that it knew of and authorized the act. Moreover, the contract contemplated the immediate installation of meters. From this fact the jury could further have inferred that, although the meter had been installed without direction from, or knowledge of defendant, notice thereof had been brought home to it before the fatal fire through its agents visiting the house for the purpose of installing a meter therein.

The claim that the fire did not result from the escape of gas rests upon the theory that no explosion took place, or at least none of grave proportions. It is argued that the gas, being lighter than air, would have filled the room from the ceiling down to the flame in the heater before coming in contact therewith, and that such accumulation of gas thus ignited would have caused a terrific explosion. The answer to this is that the gas, penetrating the floor near the flame from the gas heater, was likely drawn by the current of air produced thereby toward the fire and, thus coming directly in contact therewith, ignited before a large quantity of gas had accumulated in the room.

In support of the defense that the negligence of the parents contributed to the death of the child, reliance is placed on frequent evidence of straying gas in the house prior to the tragic event. It is charged that the mother, with knowledge of this condition, was guilty of negligence as a matter of law in leaving the children alone with the house closed. There is very great extenuation of the charge in the evidence showing that Osborne, who had installed the meter and extinguished the flame when it took fire from escaping gas a few days later, advised the mother in effect that there was no

further danger.   Contributory negligence barring recovery for injury from gas is ordinarily a question to be determined by the jury.   *Laclede Gaslight Co.* v. *Cottone,* 81 C. C. A. 471, 152 Fed. 629; *Pulaski Gaslight Co.* v. *McClintock,* 97 Ark. 576, 32 L. R. A. N. S. 825, 134 S. W. 1189, 1199; *Washington Gaslight Co.* v *Eckloff,* 7 App. D. C. 372; *Christo* v. *Macon Gas Co.,* 18 Ga. App. 454, 89 S. E. 532; *Louisville Gas Co.* v. *Fry,* 147 Ky. 754, 145 S. W. 748; *Consolidated Gas Co.* v. *Crocker,* 82 Md. 114, 31 L. R. A. 785, 33 Atl. 423; *Thomson* v. *Cambridge Gaslight Co.,* 201 Mass. 77, 87 N. E. 486; *Lee* v. *Troy Citizens' Gaslight Co.,* 98 N. Y. 115; *Richmond* v. *Gay,* 103 Va. 320, 49 S. E. 482; *Dowler* v. *Citizens' Gas & Oil Co.,* 71 W. Va. 417, 76 S. E. 845, Ann. Cas. 1914-C 341.   In the last case it was held that the striking of a match by the plaintiff to light a cigar, in a small closed room after detecting the presence of gas was not such an act of negligence as would *per se* preclude him from recovery.

Under the facts and circumstances mentioned and others disclosed by the record we think the defense of contributory negligence should have been submitted to the jury.   The judgment of the circuit court will be reversed, the verdict set aside and a new trial awarded the plaintiff.

*Reversed and remanded.* ·