Benton L. YELVERTON, Sr., and wife, Willie Yelverton, individually and in behalf of their community estates and as next friends of Benton Lee Yelverton, Jr., Appellants,

v.

Robert C. ADAMS et al., Appellees.

No. 17368.

United States Court of Appeals Fifth Circuit.

Jan. 14, 1959.

Rehearing Denied Feb. 25, 1959.

Joe H. Tonahill, Jasper, Tex., for appellants.

Earl Sharp, Longview, Tex., Eugene Cavin, Tyler, Tex., for appellees, Wardlow W. Lane, Center, Tex., Ramey, Calhoun, Brelsford, Hull & Flock, Tyler, Tex., of counsel.

Before HUTCHESON, Chief Judge, and CAMERON and BROWN, Circuit Judges.

HUTCHESON, Chief Judge.

Alleging that the negligence of defendants-appellees, Adams, plaintiffs' landlord, and Deep East Electrical Cooperative, Inc., their supplier of electrical current, in causing or permitting conditions which were the proximate cause of a fire of electrical origin resulting in the deaths of certain members of their family and injuries to others, appellants Yelverton and wife, individually and as next friend of their minor son, Benton Yelverton, Jr., brought this suit to recover their damages.

The defendants answered, denying that the fire was of electrical origin and also that they had breached any duty to plaintiffs, and each filed a motion with supporting affidavits for a summary judgment.

Plaintiffs making full reply thereto with attached affidavits and exhibits, the motions were denied and the cause proceeded to trial before the court and a jury.

At the conclusion of plaintiffs' evidence in chief, the defendants moved for an instructed verdict on the grounds that there was insufficient proof that the fire was of electrical origin, and that defendants had breached any duty to plaintiff.

The court, on the ground [1] stated by him, instructed a verdict and entered judgment accordingly.

---

1. The Court: "The most serious thing is, is there evidence in the case that could warrant any finding that any defect in the electrical system or electricity in any manner started this fire. Now, that is the matter that the court has grave concern about, and since the burden of proof of establishing it was the cause of the fire is on plaintiff, I will hear from plaintiff first briefly and let him point out to me where he thinks he has made a case on that point."

\* \* \* \* \*

The Court: "You can now start your case, you have got to establish by a preponderance of the evidence that that fire

Appealing therefrom, plaintiffs are here insisting that their evidence in chief was sufficient to take the case to the jury on all the issues joined and the judgment must be reversed for the basic error of instructing a verdict at the close of their case.

As additional grounds for reversal, appellants assign error to rulings of the court, excluding the opinion testimony of witnesses Yelverton, Jones, and McFadden, offered by plaintiff as proving or tending to prove the cause and origin of the fire.

In support of their main ground for reversal, the instructed verdict, the appellants, summarizing,[2] thus state the theory of their case:

was an electrical fire—of electrical origin out there."

\* \* \* \* \*

The Court: "I am talking about the cause of the fire out there, I am not talking about any violation of duty on any one's part. I grant you probably under the Texas authorities that if the plaintiffs did report this matter to the electric company and then and only then, the electric company would have a duty to do something about it. But you still, whether you had anything about that or not and even if it might have constituted gross negligence if that fire was not of electrical orgin, you can't recover in this case."

\* \* \* \* \*

The Court: "If there was any doubt in my mind about this case, I would take it on, but I see no need in going further with this case, I am going to grant the Motion for Instructed Verdict of each Defendant on the grounds that there is no evidence of any probative force here that would warrant findings that that fire started as a result of electricity or was of an electrical origin. Mr. Clerk, write out a verdict, 'We, the Jury, find for the Defendants', please."

2. "In summary, the evidence of the witnesses presented by the plaintiffs reflects that defendant Adams had agreed to rent the plaintiffs a residence in a good state of repair and that he would maintain it that way. After the Yelverton family moved into the house, defendant Deep East Texas Electrical Co-Operative, Inc. had, previously thereto, through their maintenance lineman Carroll, hooked up the electricity after inspecting the residence, the lighting equipment, etc., and finding it to be in excellent shape. However, upon moving into the house, the Yelvertons found no wall switches in same. The sockets, i. e., the lighting fixtures, were drop cords hanging from a ceiling in each of the rooms and in some of the rooms there were chains that were supposed to be used to pull the lights on and some of the chains were not there but on the contrary were missing. None of the chains that were supposed to switch the lights on worked. The only means therefore of turning the lights on in the house would be to screw the bulbs in, and to turn the lights off would be to screw them out; that immediately following the moving into the house by the Yelvertons the lights in the living room and kitchen would flicker on and off when they were turning the bulbs on, or moving, or shaking the wire. At times this would cause bulbs in the kitchen to burn out, and at times the bulbs in the living room would burn out, and at times both of them would burn out at the same time. That condition prevailed from the time they moved into the house on up until the fire occurred on Oct. 17, 1956.

"After the fire occurred, an inspection reflected that instead of having a fuse in the switch box there was a jumper wire being used; therefore if there was an overload of electrical current going through the switch box, the jumper wire would permit it to pass through. However, had there been a fuse there instead of the jumper wire, the fuse would have blown, thereby prevent(ing) additional current from flowing into the residence. This brought about a direct hook-up with the main line which had larger wires than the wires of the residence. The wires of the residence were not capable of handling as much electricity as the defendant Co-Op's main line was capable of handling. The jumper wire there permitted the lines to heat up and catch fire. Testimony reflects that the method of screwing the bulbs in, to turn the lights on and screwing them out, to turn off was a dangerous condition.

"Complaint was made by Yelverton to both defendants about the light bulbs frequently burning out. Defendant Adams said that he would correct it after he got more rent. Defendant Deep East Texas Electrical Co-Operative, Inc.'s agent, Carroll, said that he would go out and check on it. He was complained to by plaintiff Yelverton in September; nevertheless he failed to go out and check on the defect and the fire resulted Oct. 17, 1956. There were no circuit breakers in the house.

"The landlord Adams is here responsible to the Yelverton family for the wrongful deaths of the two minor children and the personal injuries of the adult Yelverton and minor Yelverton child because their deaths and injuries were caused by defects in the rent house that Adams warranted and contracted to be in good condition, good state of repair in which he agreed to maintain same. Ample authority is found under 32 Am. Jur., 526, 27 T.S. 345, Sec. 204.

"The case of Baray v. Escobedo [Tex. Civ.App.], 259 S.W. 1099, as well as the case of Burton-Lingo Co. v. Morton [Tex.Civ.App.], 126 S.W.2d 727, affirmed [136 Tex. 263], 150 S.W.2d 239, demonstrate complete liability of the landlord Adams by virtue of the violation of his covenant. Mundy v. Stiles [Tex.Civ. App.], 257 S.W.2d 750; United States v. Inmon [5 Cir.], 205 F.2d 681; Gillespie v. Monarch Carbon Co. [98 W.Va. 481], 128 S.E. 318; Davis v. Hochfelder [153 La. 183], 95 So. 598; Abilene Gas & Electric Co. v. Thomas [Tex.Civ.App.], 211 S.W. 600; and Huddleston v. Dallas Power & Light Co. [Tex.Civ.App.], 93 S.W. 2d 199 are cases demonstrating that the owner of rent property is liable for injury to the tenants and members of his family because of the defective wiring contained in the residence, as here.

"Touching the joint liability of defendant Adams and defendant Deep East Texas Electrical Co-Operative, Inc. with reference to their negligence in allowing electrical current to flow into the residence which was the subject of the fatal fire because of the defective wiring set-up in the jumper wire used in the fuse box instead of a fuse, there is more than ample evidence to sustain these issues of liability against the defendants.

"The evidence demonstrates clearly that the cause of the fire in the rented residence was chargeable to both defendants who are jointly negligent by virtue of the faulty wiring existing in the Adams rent house at the time the house was rented to appellees and which was maintained in this condition by the defendant Adams. The agent for Deep East Texas Electrical Co-Operative, Inc. inspected the premises, yet failed to discover the jumper wire being used in the fuse box instead of the fuse, one of the most dangerous conditions that can be resorted to. Nevertheless he went ahead and turned the defendant Co-Op's electricity on—powerful electrical current from a powerful electrical system. Furthermore, there was no multiple circuit breaker in the house—safety units to protect against electrical fires.

"While it may be considered that a clear cut, obvious proof of the origin of the fire may not have been demonstrated by the evidence, yet it cannot be denied that the origin of the fire proximately caused by the negligence of the defendant was clearly demonstrated by the strongest circumstantial evidence. Surely the doctrine of res ipsa loquitur applied".

Citing Ozark v. Wichita Manor, 5 Cir., 252 F.2d 671; Texas Utilities Co. v. Dear, Tex.Civ.App., 64 S.W.

"The expert R. O. McFaddin was asked if he had an opinion as to what would be the cause of that house catching fire and assuming the facts to be true as described above. His answer: 'Well you have got no protection there, it would set this wire afire if you are going to jump that fuse.'
" 'What caused the fire in your opinion?'
"A: 'No fuse protection'.
"In explaining his answer, he stated that if you jumped the fuse and a default develops in the house, the wire will heat up and catch fire. There is no way to cut it off. The fuse can't cut it off because it feeds around through a wire that won't cut it off and that that is considered a dangerous prevailing condition that would harm anybody's house, and the use of a jumper wire instead of a fuse was an invitation of a fire in a residence because there isn't anything that can cut it off. He further stated that his opinion as to what caused the light bulbs to continuously burn out and flicker on and off would be high voltage or loose connection in the house, more than likely loose connections making them flicker, and that that alone would set a house afire.

2d 807; Ischar v. West Texas Utility Co., Tex.Civ.App., 54 S.W.2d 842; Blassingame v. Lone Star Gas Co., Tex.Civ.App., 236 S.W.2d 526; and other cases.

Appellee Deep East Texas, taking issue with appellants' statement in their brief that there was evidence before the jury that Jack Carroll, the agent of appellees, inspected the electrical set-up and the premises, insists that there was no evidence that any agent of Deep East Texas was in the house or checked any part of the electrical set-up immediately prior to turning on the current, none that if the inside wiring was in defective condition, this was brought home to it.

It insists, too, that there was no evidence but only surmise and speculation that a jumper wire was in the fuse box and there is, therefore, no basis in the evidence for the jumper wire theory on which plaintiffs have built their case, and there was likewise no evidence that excess voltage or amperage would or did flow from the lines of the Co-Op into the lines of the residence. They particularly call our attention to the fact that appellants have quoted statements in their brief which were not introduced in evidence on the trial but were to be found in the motion for summary judgment and its attachments which, of course, were not before the jury. Insisting that the district judge was right in holding that there was not sufficient proof that the fire was of electrical origin to take this basic issue to the jury, they urge upon us further that if there was enough such evidence, evidence that defendants were in any respect negligent or otherwise at fault, and, therefore, liable for the loss caused by the fire, is wholly lacking.

The appellant Adams, as Deep East Texas does, challenges as a whole appellees' claim that there was evidence to take the case to the jury and particularly appellants' statements and conclusions as to the state of the evidence on how the fire occurred, i. e., whether it was proven to be of electrical origin. He, however, devotes the major portion of his brief to the thesis that whatever may be said of

the state of the evidence on the question whether the fire was of electrical origin, plaintiffs have completely failed to show that Adams breached any duty he owed to plaintiffs as their landlord and in support thereof, citing and quoting from the cases he regards as controlling, he undertakes an examination and analysis of the state of the evidence.

While the evidence as to whether the fire was electrically caused is wholly circumstantial and looked at as to its weight, seems rather too tailored, pieced out and made to order to carry the fullest conviction, we are of the clear opinion that we cannot say of it, as the district judge did, that it is wholly insufficient to take that phase of the case to the jury.

On the contrary, circumstantial as the evidence is, bolstered as it is by self serving and interested testimony and smacking to some extent of a contrived or confected case, we think we must say that these manifestations more affect its weight than is admissibility. In short, whether on the whole it presents a credible or an incredible story is a question of fact and not of law, is not for the court but for the jury to say, and it was error for the district judge, without putting the defendants to their proof, to take the case from it.

As to the aspects of the evidence and argument dealing with the alternative question, whether if the fire was of electrical origin, there was sufficient evidence to take the case to the jury on the issues of negligence, or whether the defendants were otherwise at fault, on which the judge expressed the tentative view that the proof might be regarded as sufficient to do so, we are content, since the case must be retired on the merits, to say no more than that, considered as the evidence must be at this juncture, in the light alone of plaintiffs' evidence, we agree with the district judge.

With respect to the complained of exclusionary rulings of the court, we think it is sufficient without ruling specifically on the points of error made, to say that, while the court was certainly correct in

refusing to permit witnesses to give their opinions as to the cause of the fire in such a fashion as to completely invade the province of the jury as to one of the main issues the case presents, that, in short, in refusing to allow the witnesses, by giving expert opinion, to conclude the issues which the jury was drawn to try, it should, on the next trial, while holding the evidence within the reasonable bounds of applicable exclusionary rules, should exercise a broad discretion to the end that all relevant and material and otherwise admissible evidence be heard.

For the error in instructing a verdict, at the close of plaintiffs' case, instead of putting the defendants to their proofs, the judgment is Reversed and the cause is Remanded for further and not inconsistent proceedings, including trial anew.

Reversed and remanded.

CAMERON, Circuit Judge.

I dissent. Cf. our decision in Deitz v. Greyhound, 5 Cir., 1956, 234 F.2d 327 and particularly the cases cited on page 332.

Rehearing denied; CAMERON, Circuit Judge, dissenting.