## Eva C. Hilgenberg v. A. R. Elam.

No. A-867. Decided December 4, 1946.
Rehearing overruled January 8, 1947.
(198 S. W., 2d Series, 94.)

*Scarborough, Yates & Scarborough* and *Edmond C. Yates,* and *Smith & Eplen,* of Abilene, for petitioners.

The Court of Civil Appeals erred in holding that the evidence failed to show that Bennett was the servant of Elam, and that

Bennett was not, as a matter of law, the servant of Elam at the time he ran over and killed Hilgenberg. Smith Bros. v. O'Bryan, 127 Texas 439, 94 S. W. (2d) 145, 148; Riggs v. Haden Co., 127 Texas 314, 94 S. W. (2d) 152; Dave Lehr, Inc. v. Brown, 127 Texas 236, 91 S. W. (2d) 693.

*House, Mercer, Edwards & Irvin,* and *R. L. House,* of San Antonio, *McMahon, Spring & Smart,* of Abilene, for respondent.

Under the facts and evidence in this case the Court of Civil Appeals committed no error in holding that the operator of the bulldozer was not the servant of Elam, and that he was acting for and under the direction of Hilgenberg at the time of the accident. Traders and Gen. Ins. Co. v. Wood, 148 S. W. (2d) 975; Shannon v. Western Indm. Co., 257 S. W. 522; Tanneberger v. Massey, 124 S. W. (2d) 949.

MR. JUSTICE FOLLEY delivered the opinion of the Court.

This is a suit filed by the petitioners, Mrs. Eva C. Hilgenberg and Mrs. Mary Hilgenberg, surviving wife and mother, respectively, of L. W. Hilgenberg, against the respondent, A. R. Elam, for damages in connection with the death of L. W. Hilgenberg, who was killed by being run over by a 60 horsepower caterpillar tractor with a bulldozer attached. The machine, which weighed about 17,000 pounds, had been furnished by Elam to Hilgenberg and Alton J. Willingham to knock down and uproot some trees and dig a surface tank on a farm south of Abilene belonging to Willingham and Hilgenberg. A driver named Bennett also was furnished with the machine and he was operating it at the time of the injury.

The chief controversy between the parties is whether Bennett, at the time of the tragedy, was the servant of Elam or Hilgenberg in performing the act causing the latter's death. The petitioners alleged that he was the servant of Elam. Elam denied that Bennett was his servant and asserted that he was the servant of Willingham and Hilgenberg who had complete control of the work, with the right to direct the manner and means of its accomplishment. He further alleged that Hilgenberg was guilty of contributory negligence.

At the conclusion of the introduction of the evidence before a jury, Elam asked for an instructed verdict upon the grounds alleged in his answer, which motion was granted and judgment

rendered in his behalf. The court of civil appeals affirmed the judgment. 192 S. W. (2d) 799.

The petitioners contend that whether Bennett was the servant of Elam, and whether Hilgenberg was guilty of contributory negligence, were questions of fact which should have been submitted to the jury. The court of civil appeals determined only the first question. It held that the evidence showed as a matter of law that Bennett was not the servant of Elam.

The material facts are undisputed. Willingham and Hilgenberg jointly owned the farm where Hilgenberg was killed. They desired to remove some of the trees on the farm and to dig a tank for water storage. Baldridge & Son owned the caterpillar tractor with the attached bulldozer. They leased it, with a driver of their own selection, to Elam. The operator was paid by Baldridge & Son and they alone had the authority to discharge him. They paid all the expenses for operating the machine and for repairs. Under the agreement the machine and driver were furnished to Elam for $6.25 per hour. Elam was a contractor engaged in building slush pits in the oil fields. He used the machine in that business. When he did not need it he would occasionally sublease it with the driver to farmers and ranchers who desired to use it. He sublet it and the driver, Bennett, to Willingham and Hilgenberg for $8.50 per hour for their use upon the farm. He was not present during the operations, he issued no orders concerning the same, nor was it contemplated that he should. He had nothing to say about the character of the work nor the manner in which it was to be performed. He was not hired to perform any work nor to obtain any certain results. In fact, he knew nothing about removing trees or building tanks. He merely agreed to furnish the machine and driver for such work as Willingham and Hilgenberg desired done. Only the driver had physical control of the machine and understood its mechanical operation, but Willingham and Hilgenberg had sole authority to show him where to work and what to do. They pointed out the directions and places for the machine to go, the timber and brush to be removed, and the excavations to be made. For some six weeks before Hilgenberg's death, Willingham and Hilgenberg, either together or alternately, had directed the operations. For several days prior to the tragedy Hilgenberg alone had directed the movements of the driver. On the day of his death they were clearing away trees at the place where the surface tank was to be dug. Hilgenberg was using his walking cane pointing out to Bennett the trees he desired

knocked down. The trees were uprooted one at the time. The driver, who sat in a set on the rear of the machine, would first drive the machine forward and bump the bulldozer into the tree, pushing it over and loosening it to some extent. Then he would drive the machine backward, put the blade in the ground, and advance the second time, tearing the tree up by its roots. Two trees had been so uprooted at the tank site prior to the death of Hilgenberg. When Bennett came to the third tree pointed out by Hilgenberg he drove the machine forward and pushed it over, and, in driving backward to prepare to hit it the second time, the right hand side of the caterpillar passed over Hilgenberg and killed him. At the time the machine started backward Hilgenberg was standing about six feet away facing the opposite direction.

■ Obviously, the facts present a problem under the borrowed servant doctrine as to whose servant Bennett was in committing the alleged negligent act causing the death of Hilgenberg. Was he at that time, and in that particular operation, acting in the business and under the direction of Hilgenberg, the borrowing or hiring employer, or did he remain the servant of Elam, the general employer? Of course, in order to hold Elam liable under the principle of respondent superior the relation of master and servant must be shown between him and Bennett with respect to the very transaction out of which the injury arose. 39 C. J. 1268, Sec. 1452.

It is apparent from the facts stated that Bennett was resonsible only to Willingham and Hilgenberg for the manner and method in which he performed the work at the time of the injury, but the petitioner contends that due to the technical and mechanical intricacies involved in the operation, he also owed certain duties to Elam with respect to the care and maintenance of the machine. It is thus our duty to determine whether in respect to the particular act of the servant he was under the control and supervision of the general employer or the borrowing employer.

■ The fact that a person is the general servant of one employer does not, as a matter of law, prevent him from becoming the special servant of another who may become liable for his acts. He may become the other's servant as to some acts and not others. Restatement of the law of Agency, Sec. 227.

■ In determining whether, in respect of a particular act, a servant, in the general employment of one person, who has been loaned to another, is the servant of the original employer or of

the person to whom he has been loaned, the test is whether in the performance of the wrongful act he continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent. 35 Am. Jur. 970, Sec. 541; 136 A. L. R. 525. Whether the borrowed employee is doing something within the normal scope of the business of the general employer or of the special employer is certainly a most important factor in determining the question of liability.

The proposition is stated in the Restatement of the Law of Agency, Sec. 227, as follows:

"Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act."

In view of these principles the conclusion is inescapable that at the time of the injury Bennett was performing a specific act clearly within the normal scope of the business of Hilgenberg and under his direction. The injury was not the result of any mechanical defect in the machine nor was it related to the proper care and maintenance of the same. On the contrary, it arose solely from the movement of the tractor as it was being driven over the very ground pointed out by Hilgenberg and in the manner and direction he ordered. This specific act was an essential part of the work being done, which was under the complete supervision and control of the deceased. At that time it was Hilgenberg who was pointing out the trees to be removed and the excavations to be made. Since he had complete control of the operation it must be assumed he possessed the authority to direct the driver to go backward as well as forward, and the backward movement of the machine was a necessary element in the process of removing the trees. At any rate, it cannot be said that Elam possessed the authority to direct the movements of the tractor in any direction, or that he had any control over the driver in the performance of the work either as to the result to be reached or as to the method of reaching the result.

.A case presenting a similar fact situation is that of McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S. W. (2d) 67, 136 A. L. R. 516. In that case the plaintiff was employed by the Works Progress Administration on a project to straighten, deepen and widen the Blue River in Kansas City. All labor was furnished and paid by the WPA which had complete supervision of the project. Kansas City, as sponsor of the project, was required to furnish all machinery and equipment. The defendant was in the business of renting tractors and other machinery. The city rented a caterpillar tractor from the defendant on a daily basis and loaned it to the WPA. The machinery company furnished a driver and paid his wages. The driver was instructed that he would receive his orders from those in charge of the project. He was told "to do whatever they wanted him to do with that equipment while has was out there, outside of jeopardizing the machine itself, like running in the river, which they did a few times." The loaned employee was an experienced driver and no one undertook to tell him how to operate the tractor. The superintendent would tell him where to work and what kind of work to do with the machine. At the time of the injury the machine was being used to pull stumps out of the river and was being driven by the driver furnished by the defendant. The plaintiff was injured by a sudden and unusual movement of the machine when he stepped upon the rear thereof to fix a draw bar pin in place with his foot. The plaintiff sued the machinery company for damages and recovered judgment in the trial court. The Supreme Court of Missouri held that the plaintiff failed to show the relationship of master and servant and that a demurrer to the evidence should have been sustained. The court said:

"If the act involved herein had been connected with the upkeep of the tractor (injury due to mechanical defects), or even its operation for a limited use, we might have a different question. * * * However, here there was nothing wrong with the tractor. On the contrary, the act causing injury was solely one of alleged negligent driving over the very ground that the borrowing employer (through its foreman) directed it to be driven over to perform the task it directed the borrower (or rented) employee to do. This task was certainly the work of the borrowing employer (an essential task to completing the project it was undertaking to do in deepening, widening and straightening the river), and it was likewise work within the normal scope of such employer's business on the project. It was solely directed by the borrowing employer which had full, complete and ex-

clusive control as to when, how and by whom this work was to be done."

Another case with analogous facts is that of Wylie-Stewart Machinery Co. v. Thomas, 192 Oklahoma 505, 137 Pac. (2d) 556. In that case the machinery company furnished the State of Oklahoma a power driven shovel and an operator on an hourly basis to be used in certain road work in conjunction with the United States Government. The company paid the operator and had the authority to discharge him, but retained no supervision over his specific duties. The WPA had a general superintendent on the job who, together with the agent of the State, had general control of the project. The plaintiff, who was injured by the alleged negligent operation of the shovel by the loaned servant, sued the machinery company for damages and recovered in the trial court. The Supreme Court of Oklahoma followed the principles announced in the McFarland case, supra, and held that the defendant company was not liable because the act causing the injury was not done for the company nor under its supervision and control within the meaning of the loaned servant rule.

Under these and other authorities cited in the opinion of the court of civil appeals we conclude as a matter of law that in respect to the act causing the injury the relationship of master and servant did not exist between Elam and the borrowed servant, and thus no liability attaches. Since we have reached this decision, the alleged contributory negligence of the deceased becomes immaterial.

The judgments of both courts below are affirmed.

Opinion delivered December 4, 1946.

Rehearing overruled January 8, 1947.