INSURORS INDEMNITY & INS. CO. et al.
v. PRIDGEN et al.

No. 12050.

Court of Civil Appeals of Texas. Galveston.
Jan. 20, 1949.

Rehearing Denied Feb. 10, 1949.

David Bland, of Houston (Austin Y. Bryan, Jr., of Houston, of counsel), for Insurors Indemnity & Ins. Co.

F. Warren Hicks, of Houston, for Traders & General Ins. Co.

McGregor & Sewell, of Houston, for Texas Employers Ins. Ass'n.

Putney & Ritchey, of Victoria, and Walter F. Brown and H. Fletcher Brown, both of Houston, for Mrs. Minnie Pridgen.

MONTEITH, Chief Justice.

This appeal in a workmen's compensation suit was brought by Insurors Indemnity and Insurance Company and the Texas Employers' Insurance Association to set aside an award of the Industrial Accident Board of the State of Texas requiring them to pay to Mrs. Minnie Pridgen, jointly and severally, the sum of $20 per week for a period of 360 weeks, as compensation for the death of her son, Walter Lee Pridgen, who was alleged to have sustained injuries which resulted in his death in the course of his employment with Sonnier Construction Company and/or Texas Lumber and Construction Company and/or Texas Shipbuilding Company. Under the terms of said award, Traders & General Insurance Company was discharged from all liability by reason of Mrs. Pridgen's claim for compensation against it. This action is a consolidation of the suits by Insurors Indemnity and Insurance Company and Texas Employers' Insurance Association to set aside the Board's award. Mrs. Minnie Pridgen then, by cross-action, alleged that she was entitled to joint and several judgments against all three of the insurance companies involved.

At the conclusion of the evidence offered by all parties, the trial court withdrew the

case from the consideration of the jury and rendered judgment in favor of Mrs. Minnie Pridgen against Insurors Indemnity and Insurance Company and Traders & General Insurance Company for compensation at the rate of $20 per week for a period of 360 weeks. The court decreed that Mrs. Minnie Pridgen take nothing against Texas Employers' Insurance Association. Insurors Indemnity and Insurance Company and Traders & General Insurance Company and Mrs. Minnie Pridgen have appealed from this judgment.

The record reflects that a short time prior to February 4, 1947, E. B. Zinneker, the president of Texas Shipbuilding Company, called the office of Sonnier Construction Company by telephone and made arrangements to lease a dragline "fully operated," for the purpose of doing certain excavation work and other jobs. Mr. Zinneker agreed to pay a rental of $8.00 an hour for the actual number of hours the machine was in operation.

Mr. Sonnier, who did not have a dragline available at that time, arranged with L. O. Smith of the Texas Lumber and Construction Company for the leasing of a dragline on a "fully operated" basis, at the rate of $7 per hour for the number of hours the machine was in operation. It was established in the trial that the term "fully operated" has the definite meaning in the construction business, that the owner of the dragline is to furnish the machine and two men to operate it, a man in charge of the machine, known as the operator, and a helper. The crew furnished is paid by the owner of the machine who also pays the social security and withholding taxes and workmen's compensation premiums based on the salary earned by the crew members.

E. B. Zinneker testified that he was president of the Texas Shipbuilding Company at the time Walter Lee Pridgen was killed. He testified that the dragline had been on his premises three or four days at the time of the accident; that the work on which Pridgen was killed was the last of several jobs he had had the operators of the machine do; that the work being done at the time of the accident was the moving of rocks in necessary general maintenance work for the company. He testified that at the time he hired the dragline, he had in mind moving these rocks and that he told the men to pick up and move them.

Mr. L. O. Smith testified that he rented this dragline to Sonnier Construction Company at the rate of $7.00 an hour for the machine fully equipped with O. A. Pridgen as operator and Walter Lee Pridgen as helper. That Mr. Sonnier had paid him at the agreed hourly rate and that the amount paid by the Sonnier Construction Company included the wages of the operators with the machine; that when the dragline left his place he knew that it was going to the Texas Shipbuilding Company.

Mr. O. A. Pridgen testified that Mr. L. O. Smith told him and his brother to take the dragline down to the Texas Shipbuilding Company's yard and to report to Mr. Zinneker and do what he wanted done; that they did several jobs for him and that after each job they reported back to Mr. Zinneker and received instructions as to where to move the machine and what to do. That after he had completed a slush pit he was instructed to load some rocks into trucks supplied by Mr. Zinneker, and that while he was in the process of pulling the cable of the dragline around to tie onto a rock, the dragline boom came in contact with an electric wire and his brother was electrocuted. He testified that Mr. Smith only came out to the job on one occasion and that was when the truck broke down and that he came out to see if it was getting fixed.

The questions presented in the appeal are, we think, controlled by the principle of law announced in the recent case of Hilgenberg et al. v. Elam, 145 Tex. 437, 198 S.W. 2d 94, 96, and the authorities therein cited, in which the material facts and the legal principles involved are almost identical with those in the instant case.

■ In that case the main controversy between the parties was whether the driver of a tractor who had been furnished with the machine was, at the time and in the particular operation in which Hilgenberg was killed, acting in the business and under the direction of the borrowing or hiring employer or whether he remained the servant

of the general employer. In deciding the case, the Supreme Court of this State held that the facts presented a problem under the borrowed servant doctrine as to whether the driver of the truck, in committing the alleged negligent act which caused the death of Hilgenberg, was, at that time and in that particular operation, acting in the business and under the direction of Hilgenberg the hiring employer who received the fatal injuries or whether he was the servant of Elam, the general employer. The court held that in order to hold Elam liable under the principle of respondeat superior the relation of master and servant must have been shown between him and Bennett with respect to the very transaction out of which the injury arose, Citing 39 C.J. § 1452, page 1268; 57 C.J.S., Master and Servant, § 562, and that the fact that a person is the general servant of one employer does not, as a matter of law, prevent him from becoming the special servant of another who may become liable for his acts.

■ In its opinion the court said: "In determining whether, in respect to a particular act, a servant, in the general employment of one person, who has been loaned to another, is the servant of the original employer or of the person to whom he has been loaned, the test is whether in the performance of the wrongful act he continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent." Citing with approval 35 Am.Jur. 970, Sec. 541.

In the case of Hilgenberg v. Elam, supra, the Supreme Court quoted with approval from Restatement of the Law of Agency, Sec. 227, in which it is said: "Since the question of liability is always raised because of some specific act done, the important question is not whether or not he remains the servant of the general employer as to matters generally, but whether or not, as to the act in question, he is acting in the business of and under the direction of one or the other. It is not conclusive that in practice he would be likely to obey the directions of the general employer in case of conflict of orders. The question is as to whether it is understood between

him and his employers that he is to remain in the allegiance of the first as to a specific act, or is to be employed in the business of and subject to the direction of the temporary employer as to the details of such act."

The court also cited with approval the case of McFarland v. Dixie Machinery & Equipment Co., 348 Mo. 341, 153 S.W.2d 67, 136 A.L.R. 516, 525, in which the material facts and the issues presented are similar to those in the instant case. In that case the Supreme Court of the State of Missouri held that under the borrowed servant doctrine, the owner of a tractor which was rented with its driver to the city for use on a W.P.A. project under direction of a W.P.A. supervisory personnel was not liable as master for injuries sustained by W.P.A. employee as the alleged result of the driver's negligence.

The case of Wylie-Stewart Mach. Co. v. Thomas, 192 Okl. 505, 137 P.2d 556, involved a fact situation similar to that in the instant case. In that case a machinery company furnished the state of Oklahoma a power driven shovel and an operator on an hourly basis to be used in certain road work in conjunction with the United States Government. The company paid the operator and had the authority to discharge him, but retained, as in the instant case, no supervision over his specific duties. The Supreme Court of Oklahoma held that the defendant company was not liable because the act causing the injury was not done for the company nor under its supervision and control within the meaning of the loaned servant rule.

In the case of Shannon v. Western Indemnity Co., Tex.Com.App., 257 S.W. 522, 523, it was held that to be an employee within the meaning of the compensation laws, it was necessary that the employee be "in the service of another" and that there must exist between the parties the relationship of master and servant as its terms are used in the broad sense that one has the right of ultimate control and direction over another.

It is, we think, obvious that the deceased, Walter Lee Pridgen, was neither an employee of the Texas Lumber and Construc-

tion Company nor the Sonnier Construction Company at the time he received his fatal injuries.

It follows that, since under the undisputed evidence in this case, Walter Lee Pridgen received his fatal injury while he was a "special employee" of Texas Shipbuilding Company and in the course of his employment with them, the judgment of the trial court must be reversed and judgment here rendered in favor of crossplaintiff, Mrs. Minnie Pridgen and against Insurors Indemnity and Insurance Company, who carried compensation insurance for them.

Reversed and rendered.