## ABBOTT et al. v. CITY OF GRANBURY.

### No. 15363.

Court of Civil Appeals of Texas.
Fort Worth.

Sept. 26, 1952.

Rehearing Denied Oct. 31, 1952.

232

McWhorter, Howard & Cobb, of Lubbock, for appellants.

B. Jay Jackson, of Granbury, and Dan Gibbs, of Mineral Wells, for appellee.

RENFRO, Justice.

The City of Granbury recovered judgment against C. D. Abbott and J. P. Abbott, doing business as Domino Taxicab Company, and Dave B. Tate, driver of a cab belonging to Domino Taxicab Company. The judgment was based on a jury verdict finding that a certain road grader belonging to the City of Granbury was badly damaged by reason of the negligence of defendant Dave B. Tate.

The Abbotts, only, have appealed from the judgment. Their first point of error is to the effect the trial court erred in overruling their motion for instructed verdict. The gist of the complaint is that the taxicab was under lease to one Higden at the time of the accident and that the driver was the agent of said Higden and not of appellants.

The jury found Tate was an employee of appellants at the time of the collision and was engaged in the scope of his employment. The jury also found that Higden did not pay the driver, and that he did not direct the driving of Tate on the trip in question.

In determining whether the giving of an instructed verdict would have been proper, all testimony in the case must be considered in its most favorable light to the one against whom the instruction is to be given. Conflicts should be disregarded and every reasonable intendment deducible from the evidence should be indulged in his favor. Happ v. Happ, Tex.Civ.App., 160 S.W.2d 227; Rodriguez v. Higginbotham-Bailey-Logan Co., 138 Tex. 476, 160 S.W. 2d 234; Le Master v. Fort Worth Transit Co., 138 Tex. 512, 160 S.W.2d 224; Mc-Elwee v. Manufacturer's Casualty Ins. Co., Tex.Civ.App., 221 S.W.2d 381.

In order for appellee to recover against appellants it was necessary for it to allege and prove that appellants were the owners of the taxicab, that the driver Tate was responsible for the collision, and that the taxicab was being used at appellants' direction or for the furtherance of their interest or business.

Ownership of the taxicab is admitted by appellants. That negligence of Tate was responsible for the collision is without dispute. So the only question remaining is whether or not the taxicab was being used at the appellants' direction or for the furtherance of their interest or business at the time of the collision. As already pointed out, the jury answered these questions in the affirmative.

In substance, the testimony shows that Higden went to appellants' place of business in the City of Lubbock late in the afternoon of December 25, 1950, and asked if he could rent a taxicab with Tate as driver for three days. Tate was a regular driver in appellants' employ. Appellants agreed to let him have the taxicab and to allow Tate to drive. The rental of $25 a day was paid in advance. Tate and Higden left Lubbock about six o'clock in the afternoon of the same day and arrived in Hamilton, Texas, on the morning of the 26th. Higden became sick while in Hamilton and released Tate and the taxicab about two o'clock on the afternoon of the 27th of December. Tate thereupon started back to Lubbock and while entering the City of Granbury, the resulting collision and damage to appellee's road equipment occurred.

Although there was some conflict in the testimony, we must, in line with the findings, view the testimony in the light most favorable to appellee. Higden testified that he hired the cab and driver through Mr. Abbott, that he paid Mr. Abbott for Tate's services. His testimony is substantiated by that of the driver Tate, who testified he was present during the discussion between Abbott and Higden and saw Higden hand two twenty dollar bills to C. D. Abbott, which was to be Tate's compensation. Higden was a cripple and did not possess a driver's license. There is no testimony that he knew how to drive a car. The cab had a governor which prevented the car from being driven beyond a speed of 45 miles an hour. At the time Higden released Tate in Hamilton, he gave him no instructions but merely stated he was released.

The fact that appellants paid the salary of the driver was a circumstance to be considered in determining whose agent the driver was. Gorman v. A. R. Jackson Kansas City Showcase Works Co., Mo. App., 19 S.W.2d 559. Whether a borrowed employee is doing something within the normal scope of the business of the general employer or of the special employer is an important factor in determining the question of liability. Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94.

As a general rule, a taxicab is subject to call or hire by any member of the public who may apply and pay the established rates, or subject to contract by a person desiring a special trip from one point to another, but the operation of the cab is completely within the power and control of the operator and is in no manner under the control of the passenger, except only with respect to the place of destination. 60 C.J. S., Motor Vehicles, § 7, p. 115 and cases cited.

In determining whether the driver is the servant of the owner or an independent contractor, all of the facts and circum-

stances are to be considered, but the usual test is the owner's right to control the details and manner in which the employment is carried on and not merely the power to control the result, and where the right to control exists, the driver is the owner's servant even though the power is not exercised.

In the instant case there is evidence to the effect that Higden had no authority to hire or fire the driver Tate, that he had no authority to direct his manner or mode of operating the cab, and in fact assumed no such authority or attempted to so assume such authority; that the only direction given by Higden was to give him the point or points of destination and probably the general route to be followed. Higden did not attempt to exercise any of the details of the operation of the cab.

■ Appellants' business was admittedly the transportation of passengers. On the trip involved the driver was acting within the normal scope of his general employment. This, too, could be taken into consideration by the jury. Moreover, the evidence shows without dispute that Higden released the cab and driver several hours prior to the collision in question and had no supervision whatsoever over the cab after such release. He gave the driver no instructions' and reserved no rights. The mission on which the driver had originally embarked had been terminated and the driver Tate was returning to the owners after finishing the work for which he had been hired. If the relation of master and servant had ever been terminated between appellants and Tate, the relationship was resumed when Tate started the return journey after being released by Higden. Russell v. Scharfe, 76 Ind.App. 191, 130 N.E. 437.

It is apparent that Higden hired the cab for a pleasure and social trip and the purpose was one for which appellants maintained their business and served the public. Bower Auto Rent Co. v. Young, Tex.Civ. App., 274 S.W. 295. ·

■ We have given careful consideration to the evidence and circumstances presented to the jury, and considering same in connection with the rules hereinabove set forth, we have reached the conclusion there is ample testimony to support the findings of the jury.

The court did not err in overruling appellants' motion for instructed verdict.

The point of error is overruled.

■ The oral deposition of the defendant Tate was taken by the appellants on July 28, 1951. At the time the questions were asked of Tate, he answered the question, "Q. Do they ever let the fellow who wants to hire the cab drive it himself? A. Yeah," and "Q. That is the usual practice isn't it? A. That is right," and "Q. That the man who hires the cab drives it himself? A. Yes." Before signing the deposition on the 16th of August, 1951, Tate changed the above three answers to "No." Immediately after the deposition was subscribed and sworn to by Tate, it was filed with the papers in the case in the District Clerk's office in Hood County. On the morning of January 14, 1952, the date the case was set for trial, appellants moved to strike the deposition of Tate on the ground that answers to material questions had been materially changed after the giving of the deposition and before the signing thereof by the witness and the notary did not file a certificate showing why the answers were changed. The motion was overruled.

Appellants objected to the introduction of the deposition in evidence on the same ground and the objection was overruled. The three questions to which answers were changed were not admitted in evidence.

Inasmuch as no party, to the suit contends that Higden was to drive the cab himself, we do not see the materiality of the questions asked. The court did not err in permitting appellee to introduce the deposition in evidence.

The points of error are overruled.

Judgment of the trial court is affirmed.