**Guadalupe Z. LONGORIA, Appellant,**

v.

**VIOLET GIN COMPANY et al., Appellees.**

No. 13261.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 8, 1958.

Rehearing Denied Feb. 5, 1958.

J. Marvin Ericson, Keys, Russell, Keys & Watson, Corpus Christi, for appellant.

Kleberg, Mobley, Lockett & Weil; Fischer, Wood, Burney & Nesbitt, Corpus Christi, for appellees.

W. O. MURRAY, Chief Justice.

This suit was instituted by Guadalupe Z. Longoria against the Violet Gin Company and G. C. Kay Company, seeking to recover damages for personal injuries sustained by him when struck by a falling piece of corrugated sheet metal while working as an employee of E. O. Ross Gin & Elevator Service on the premises of Violet Gin Company. Longoria alleged that his injuries were proximately caused by the

negligence of O. M. Cantu, an employee of Violet Gin Company, in handling pieces of sheet metal at the time of the injury. In the alternative, Longoria alleged that Cantu was the employee of G. C. Kay Company, acting within the scope of his employment, and that the injury was proximately caused by Cantu's negligence as the agent of G. C. Kay Company. Longoria prayed for recovery of his damages against Violet Gin Company and alternatively against G. C. Kay Company, but not against both defendants as joint tort-feasors. In his pleadings, Longoria acknowledged that Houston American Insurance Company was entitled to subrogation of a part of his claim, but the subrogation does not enter into the question raised by this appeal and need not further be mentioned.

The trial was to a jury, and upon conclusion of the evidence the trial court peremptorily instructed the jury to return a general verdict for each of the defendants, and upon such verdict rendered judgment that plaintiff take nothing, from which judgment Guadalupe Z. Longoria has prosecuted this appeal.

█ The first question presented by this appeal is whether there was sufficient evidence to raise a jury question as to the agency and course of employment of O. M. Cantu. Appellant alleged that Cantu was the agent, employee or servant of Jerome Jalufka, doing business under the trade name of Violet Gin Company, or, in the alternative, that Cantu was the agent, employee or servant of G. C. Kay, doing business under the trade name of G. C. Kay Company. There is no evidence that Cantu was the agent, servant or employee of G. C. Kay. In fact, appellant does not even contend that there is such evidence. Appellant made demand for four admissions, under Rule 169, Texas Rules of Civil Procedure, upon Jerome Jalufka with reference to Cantu being his employee. Jalufka did not answer the first demand and his answers to the other three were evasive. Therefore, we hold that appellant was entitled to the four following admissions:

1. That Violet Gin Company had on its payroll on May 24, 1955, a man by the name of O. M. Cantu.

2. That O. M. Cantu was present on the Violet Gin Company's gin plant premises in or near the town of Violet, Texas, on the morning of May 24, 1955.

3. That O. M. Cantu was working on such gin plant premises on the morning of May 24, 1955.

4. That Violet Gin Company paid O. M. Cantu wages for work done by him on the gin plant premises of Violet Gin Company on May 24, 1955.

Other than the above admissions there is very little evidence in the record indicating that O. M. Cantu was the agent, servant or employee of Violet Gin Company and in the course of his employment at the time Longoria was injured, but we will assume, without deciding, that such was the case.

Appellant next contends that the evidence was sufficient to raise the issue of negligence on the part of Jerome Jalufka, which was the proximate cause of his injuries. We do not agree.

The first witness called by appellant was Urbano Molino. He testified that Guadalupe Longoria was his father-in-law. Longoria was a welder and Molino was his helper. They were both working upon the premises of Violet Gin Company on the morning of May 24, 1955, for one E. O. Ross. At about 8 A.M. on that morning Molino went around in front of the welding machine to crank it and was having some trouble getting it started. Longoria started around on the south side of the machine to choke it when he was injured. Molino did not see what happened but immediately thereafter he heard Longoria say he was injured; he looked up and saw blood upon Longoria's wrist and also saw O. M. Cantu standing on top of the middle or second stack of corrugated sheet metal holding one or more sheets in his two hands, the sheets resting on the stack. The three

stacks of sheet metal were parallel to the welding machine. One stack was between Cantu and appellant, and the other stack was beyond Cantu. Longoria was struck by a sheet of corrugated metal, but Molino did not see where it came from or what caused it to strike appellant. He estimated that Cantu was some nine feet from appellant.

Appellant testified to almost the identical facts. He did not see where the sheet iron came from that struck him. He looked up after he was struck and saw Cantu standing on the middle stack of sheet metal, holding one or more sheets in his hands, with the ends resting on the same stack upon which Cantu was standing, with his hands holding the edges of the sheets about one-third down from the top, and the sheet or sheets resting at about 85 degrees from the horizontal. Cantu was facing east, as was appellant. He did not see where the sheet iron came from that struck him.

In addition to Violet Gin Company, the E. O. Ross Gin & Elevator Service, the G. C. Kay Company, and another contractor were doing work upon the Violet Gin Company's premises. The G. C. Kay Company, at the time of the accident, was either repairing or building a grain elevator on the premises, near where Longoria was injured. The sheet metal was being used in connection with the building or repairing of the grain elevator. Violet Gin Company agreed to and had secured the sheet iron.

■ Appellant did not call O. M. Cantu as a witness or attempt to show any reason why he did not do so. There was no evidence that at the time of the trial Cantu was in the employment of the Violet Gin Company. Under such circumstances it will be presumed that the testimony of Cantu would not have been helpful to appellant. 1 McCormick and Ray, p. 138, Sec. 100, 2d Edition. Before appellant will be permitted to rely upon the doctrine of res ipsa loquitur he must produce all available evidence or show why he cannot do so.

Alley v. Texas Electric Service Co., Tex. Civ.App., 134 S.W.2d 762.

■ The evidence was insufficient to invoke the doctrine of res ipsa loquitur, in that it fails to show that the injury could only have occurred by the negligence of Jerome Jalufka or one of his agent, employees or servants. McClish v. R. C. Young Feed & Seed Co., Tex.Civ.App., 225 S.W.2d 910; Rounsaville v. Bullard, 154 Tex. 260, 276 S.W.2d 791; Comet Motor Freight Lines v. Holmes, Tex.Civ.App., 175 S.W.2d 464; Montgomery Ward & Co. v. Sewell, 5 Cir., 205 F.2d 463, 38 Am.Jur. 996; Alley v. Texas Electric Service Co., Tex. Civ.App., 134 S.W.2d 762; Wichita Falls Traction Co. v. Elliott, 125 Tex. 248, 81 S. W.2d 659.

There is no testimony that the sheet of corrugated iron which struck Longoria came from the hands of Cantu. It is a fair deduction that if Cantu, who was facing east, had turned loose of the sheets that he was holding they would have fallen back on the stack of sheet iron on which he was standing, unless carried south by some new and intervening force. There is evidence, introduced by appellee, that there was a wind of from fifteen to seventeen miles per hour blowing on the morning of the injury, but appellant does not even contend that the sheet which struck him was carried to the south by the wind.

Appellant alleged six specific acts of negligence, as follows:

(1) Cantu "attempted to raise such large pieces of corrugated sheet iron from the ground without having secured a proper grip thereon;"

(2) Cantu "attempted to pick up from the ground more than one piece of such corrugated sheet iron at one time;"

(3) Cantu "attempted to pick up and raise from the ground two or more pieces of such corrugated sheet iron at one time, when they were stacked one upon the other;"

(4) Cantu "attempted to carry more than one piece of corrugated sheet iron at one time, without having first secured a sufficient grip thereon;"

(5) Cantu "while attempting to raise and pick up said corrugated sheet iron from the ground, permitted same to slip from his grasp and strike plaintiff;"

(6) Cantu "while attempting to carry said corrugated sheet iron, permitted same to slip from his grasp or grip and to strike plaintiff."

■ There is simply no evidence that Cantu was guilty of any specific act or acts of negligence. There is no evidence that Cantu did anything that a reasonably prudent person would not have done under the same or similar circumstances. Nor is there any evidence that he failed to do anything that a reasonably prudent man would have done under the same or similar circumstances.

There being no evidence to support any specific acts of negligence, and appellant having failed to establish liability under the doctrine of res ipsa loquitur, the trial court properly gave an instructed verdict.

The judgment against G. C. Kay Company must also be affirmed, as appellant does not even contend that he made out a prima facie case against G. C. Kay Company.

The judgment of the trial court is affirmed.

POPE, Justice (dissenting).

Plaintiff, Longoria, urges that the trial court erred in holding, (1) that there is no evidence that Cantu was negligent, and in holding (2) that there is no evidence that Cantu was the employee of Violet Gin Company. Both of these points present questions of law. Liberty Film Lines v. Porter, 136 Tex. 49, 146 S.W.2d 982. In determining whether the court properly instructed a verdict, we must view the evidence in the light most favorable toward plaintiff, and indulge against the instruction every inference that may properly be drawn from the evidence. White v. White, 141 Tex. 328, 172 S.W.2d 295. "If there is any conflicting evidence, either direct or circumstantial, in the record of a probative nature, the case is for the jury." Stevens v. Karr, 119 Tex. 479, 33 S.W.2d 725, 729.

I respectfully dissent from the view expressed by the majority. Plaintiff, Longoria, presented his evidence and then rested. Defendant Violet Gin Company presented its evidence, and rested. The court then granted an instructed verdict. The opinion of the majority holds that in a negligence case, the plaintiff must produce eye witnesses to prove each fact. It holds that circumstances, however compelling, cannot be used to prove a jury case. It means that in the absence of direct proof, a judge should draw the inferences from the circumstances rather than the jury. It means that a plaintiff must prove his case beyond a reasonable doubt, and if there exists any reasonable hypothesis consistent with non-liability the court should withdraw the case from the jury. It means that the plaintiff must not only prove a prima facie case, but he must also negative all adverse inferences, and this must be done beyond a reasonable doubt. These principles are not the law.

There was evidence of negligence. Plaintiff among other matters, alleged that "said employee and servant (Cantu) of said defendant, while attempting to raise and pick up said corrugated sheet iron from the ground, permitted same to slip from his grasp and strike plaintiff." Plaintiff proved that he was facing east, working with his welding machine. His machine was to his left, on the north. To the south and on his right were three stacks of sheet iron which paralleled his welding machine. He suddenly saw a sheet of iron flying toward him. He threw up his right hand to protect his face and neck. The metal came from Longoria's right-hand side, the south side.

That was the side and the only side from which the proof shows there was any stacked metal. Longoria instantly turned to his right and saw Cantu standing on the second stack of sheet iron holding two sheets of the iron in his hands. Cantu was holding the sheets of metal at an angle of about seventy-five degrees from horizontal with the bottom resting on the stack. There was nobody else to the right-hand or south side of Longoria except Cantu. Cantu was also facing east. These facts were proved. Witness Molino testified that he saw Cantu holding sheet iron immediately after the injury. He also testified that after the injury Cantu "put them back down." When asked about the number of people in the vicinity of the sheet iron, he answered, "only the one who was picking them up." Longoria testified to these same facts and nobody denied them. He said, "When I looked around, this fellow Cantu was standing there with some pieces of iron in his hand, turning it up with two hands like that (illustrating)."

Longoria testified that Cantu was four and one-half feet away from him immediately after the accident. Witness Molino estimated the distance between Cantu and Longoria at nine feet. The jury could, and we must take the most favorable view of the evidence toward plaintiff, but whether we take the evidence of either witness, a sheet falling from Cantu's grip would strike plaintiff, because the direct testimony is that the sheets of iron were from eight to ten feet long.

The majority holds that because someone did not see the sheet of iron leave Cantu's hand or control, the plaintiff failed to prove a case. The conclusion is reached because, as the majority states, there were other persons and firms working around the general plant grounds. The majority concludes that there is another possible explanation for the accident. The direct proof is that all these other operations and people were either to the west of and behind Longoria and Cantu, or to the south, at least thirty feet away. Defendants, by cross-examination, endeavored to get an admission from Longoria that the sheet iron could have come from above or behind him instead of from the direction of Cantu. Longoria positively denied this and said that it came "from the side." When asked if it came from up high as if it fell from the top of a tank, he stated: "It was coming from the side." Hence, again, we have the direct denial of the defendants' theory that the sheet came from some other place.

The direct testimony is that the wind was blowing normally. The average velocity was about fifteen and a half miles per hour. It was blowing from the southeast. The majority say that "it is a fair deduction" that the sheets would have fallen back on the stack of sheet iron. It is not for us to draw deductions from the evidence; that is the task of the jury, and they may disagree with the majority, as I do. The majority announce the law that sheet iron falls east and west and is precedent for the proposition that sheet iron does not fall north or south.

This case, therefore, is narrowed down to a split second of time when a witness did not see a sheet of iron. All other matters are proved by direct evidence. A jury could draw an equally fair deduction that Cantu was four and a half feet away, picking up several ten-foot pieces of sheet iron at the same time and that he lost control so that one sheet fell in the direction of Longoria. They could draw a fair inference against defendant that a wind from the southeast would blow any metal which fell from a place to the west or north of Longoria so it would have entirely missed him. It would do no violence to my sense of deduction if a jury should find that the metal came from the only place and only direction there was a man manipulating several sheets of iron, with that man less than two steps away from the injured plaintiff.

'The opinion of the majority requires a plaintiff to eliminate, as a matter of law, all possible contrary explanations and inferences for the accident. There are few negligence actions in which there are not inferences both of negligence and also of no negligence. A case can be proved by inferences though there are no eye witnesses to the fact. Phoenix Refining Co. v. Powell, Tex.Civ.App., 251 S.W.2d 892; Missouri-Kansas-Texas R. Co. of Texas v. Sanderson, Tex.Civ.App., 174 S.W.2d 646; West v. Cashin, Tex.Civ.App., 83 S.W.2d 1001, 1007.

The majority draws adverse inferences from plaintiff's failure to call certain witnesses. The first fault with the argument is that such inferences are for the jury. The other fault with the argument is that the witnesses who were not called were the defendant and his employee, Cantu. The principle announced by the majority would impose the duty on the plaintiff to call the adverse party and his employee or suffer an instructed verdict. In my opinion, the inferences, after both parties closed, would operate strongly against the defendant, who neither took the witness stand nor called his employee, Cantu. This is the rule stated in 17 Tex.Jur., Evidence, Sec. 86:

"Where a party to an action fails to produce evidence which he could have produced and which it was his duty to produce, it will be presumed that if produced it would have been unfavorable to him and would have operated against him and every intendment will be in favor of the opposite party. Such an unfavorable presumption may arise, for example, from the failure of a party to produce testimony peculiarly within his knowledge or his failure to call witnesses who have knowledge of the facts, especially his own agents or servants."

The other point presented in the case is whether plaintiff proved that Cantu was the servant of the defendants. There is no evidence that ties the G. C. Kay Company to Cantu in any way, and the directed verdict in that firm's favor should be affirmed. While this Court is in agreement that plaintiff proved that Cantu was the employee of Violet Gin Company, I should like to discuss that matter more fully.

There are at least three established facts from which inferences of the master-servant relationship may be drawn. Who paid Cantu? The record shows that Violet Gin Company had Cantu on its payroll on the day in question, and that it paid him his wages "for work done by him on the gin plant premises" on the day of the accident. This is fact one. This relationship between Cantu and Violet Gin Company, by which the Gin Company paid him for the day's work, produces the easy inference that the paying employer also controlled the employee. Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W. 2d 416, 418; Moreman v. Armour & Co., Tex.Civ.App., 65 S.W.2d 334, 338; Southern Pac. Co. v. Wellington, Tex.Civ.App., 36 S.W. 1114; 57 C.J.S. Master and Servant § 501 (a) (1).

Plaintiff further proved that Cantu was actually working on the Gin Company premises. Defendants admitted that Cantu "was working on such gin plant premises on the morning of May 24, 1955," and was paid for work done by him "on the gin plant premises." Plaintiff proved that he began work at 8:00 o'clock in the morning. It was at that same time that Cantu was seen working on top of the piles of sheet iron. This is fact two. From this fact, it is a simple inference that Cantu was under the control of the one on whose premises he was performing the work. Taylor, B. & H. R. Co. v. Warner, 88 Tex. 642, 32 S.W. 868; Texas Co. v. Freer, Tex.Civ.App., 151 S.W.2d 907; Murray's Case, 130 Me. 181, 154 A. 352, 75 A.L.R. 720; Dobson's Case, 124 Me. 305, 309, 128 A. 401, 403, 42 A.L.R. 603; 56 C.J.S. Master and Servant § 12; accord, Joslin v. Idaho Times Pub. Co., 56 Idaho 242, 53 P.2d 323.

The record by stipulation shows that Violet Gin Company had some character of a construction contract with G. C. Kay Company, by which that firm was to erect certain structures. The Gin Company had agreed to furnish the necessary sheet metal, and, according to the stipulation, the Gin Company "had ordered and secured" the sheet metal. This is fact three. A fact finder could very well draw the inference that Cantu was working with the sheet metal to further the interest of his employer, since the Gin Company was interested in the progress of the construction. McAfee v. Travis Gas Corporation, 137 Tex. 314, 153 S.W.2d 442, 446; Ochoa v. Winerich Motor Sales Co., 127 Tex. 542, 94 S.W.2d 416; Baray v. Escobedo, Tex. Civ.App., 259 S.W. 1099; Kampmann v. Rothwell, Tex.Civ.App., 107 S.W. 120, 122. The reasoning of defendant Gin Company is that the nature of employer's business was ginning cotton, and that since Cantu was not doing something in connection with that process, he was not engaged in the business of his employer. This record shows that the employer was not only interested in ginning cotton, but that he also was interested in some improvements on his physical plant. It would be a strange rule which stated that an employer's responsibility did not commence until his plant was erected.

We are not limited to a single fact from which an inference of the master-servant relationship might be drawn. We have several. A jury could well have found that Cantu was under the control of the master who paid him, on whose premises he was working, and whose interest he was advancing.

The Gin Company suggests the possibility that Cantu was a loaned servant. There is no fact in this record which suggests this. Admittedly, Violet Gin Company was Cantu's general employer. The idea that he was the special employee of some undesignated employer crept into this case in the briefs. It was not pleaded. It was not stated as one of the grounds for the instructed verdict. It was not raised by the evidence. It appears as argument in the briefs. Whether Cantu was a loaned employee, and whether he was loaned to an independent contractor are affirmative defenses, with the burden of proof upon the defendant. Hilgenberg v. Elam, 145 Tex. 437, 198 S.W.2d 94; Ochoa v. Winerich Motor Sales Co., supra; 56 C.J.S. Master and Servant § 12.

I would reverse and remand the case as to Violet Gin Company.