## UNITED STATES FIRE INSURANCE COMPANY, Appellant,

v.

## Mrs. Clarence WARDEN, a Widow, et al.

### No. 4477.

Court of Civil Appeals of Texas, Eastland.

Sept. 17, 1971.

Rehearing Denied Oct. 8, 1971.

McMahon, Smart, Sprain, Wilson & Camp, John P. Camp, Abilene, for appellant.

Scarborough, Black, Tarpley & Scarborough, J. R. Black, Jr., Abilene, Hammond & Hammond, Burnet, Rassman, Gunter & Boldrick, James P. Boldrick, Midland, for appellees.

COLLINGS, Justice.

This is a workmen's compensation case. The appeal is from a judgment based upon a jury verdict finding in special issue number one that Clarence Warden, deceased, was not a borrowed employee of Wheaton Van Lines, Inc. The right of appellee, Warden's widow and children, to receive death benefits under the Workmen's Compensation Act is not disputed. The controversy is between two insurance companies as to which is liable for such death benefits. Liberty Mutual Insurance Company, hereinafter referred to as Liberty Mutual carried the workmen's compensation cover-

age for Wheaton Van Lines, Inc., hereinafter referred to as Wheaton, an interstate carrier of furniture. United States Fire Insurance Company, hereinafter referred to as United States Fire, carried the workmen's compensation insurance for Evan Anderson d/b/a Security Van and Storage Company, hereinafter referred to as Security, the local agent for Wheaton in Abilene, Texas. Anderson was an intrastate carrier of furniture in Texas. The issue in the case is whether at the time of his death in Arizona, while he was hauling furniture from the state of Washington to points in Texas and Alabama, Clarence Warden was a borrowed employee of Wheaton or was at such time only a general employee of Security. The Industrial Accident Board found that Warden was employed by both Security and Wheaton at the time of his death and ordered death benefits to be paid jointly and severally by Liberty Mutual and United States Fire. As heretofore noted the jury found that Warden was not a borrowed employee of Wheaton, and based upon such finding, judgment was rendered in favor of Liberty Mutual. United States Fire has perfected its appeal. The record shows that Evan Anderson is the sole owner of Security Van and Storage Company of Abilene, Texas. On March 20, 1968, Anderson as owner of Security entered into an agency agreement with Wheaton Van Lines, Inc., a common carrier by motor vehicle of household goods in interstate commerce. Security could not operate outside the state of Texas because the only permit which it held for carrying household goods was issued by the Railroad Commission of the state of Texas authorizing it to carry goods from Abilene, Texas to and from other points in Texas. During September of 1968 Anderson hired Warden as a truck driver, and on November 15, 1968 Anderson as owner of Security leased a truck tractor and van type trailer to Wheaton by two written lease agreements, the terms and conditions of which leases are identical and will hereinafter be referred to as a single lease.

All of the parties hereto have stipulated that at the time of his death Warden was operating the truck and loaded van pursuant to the lease agreement between Anderson as lessor and Wheaton as lessee. Anderson testified that at any time the truck was operated outside the state of Texas it was operated under the lease agreement with Wheaton. The lease provided in part as follows:

"1. The Lessor does hereby lease to the Lessee, for the term hereinafter set forth, the vehicles herein described, said vehicles to be used during the term of this lease solely and exclusively for transporting household goods as hereinabove defined, and under the direction and control of Lessee.

2. The Lessor agrees that (it) will at (its) (his) own cost and expense provide such drivers and assistants as may be required to operate said leased motor vehicles and that (it) (he) will pay all wages of said employees and all taxes now and hereafter imposed upon or measured by wages of said employees. Lessor agrees that (it) (he) will, at (its) (his) own expense and cost, provide workmen's compensation insurance covering (its) (his) said employees while operating in Lessee's service and shall furnish Lessee with a certificate of such insurance, which certificate shall have 'ALL STATE' or 'Interstate' endorsement attached. Lessee shall have the right to hire and discharge the drivers and assistants so employed.

15. Notwithstanding any provisions contained herein which might be construed otherwise, the Lessee shall have the exclusive possession, control, and use of the said equipment when operated by the Lessee; and during the period the vehicle is operated in its service, Lessee completely assumes full responsi-

bility to the public, the shippers, and to all state and federal regulatory bodies or authorities."

Appellant presents points contending that the court erred in overruling its motion for a directed verdict, in overruling its motion to disregard the jury's answer to special issue number one and in overruling its motion for judgment non obstante veredicto, because there was no evidence to support the verdict, and that the evidence showed conclusively that at the time of his death Warden was a borrowed employee of Wheaton. Appellant further contends that the court erred in overruling its motion for a new trial because the evidence is insufficient to support the finding of the jury in answer to special issue number one and that such finding is against the great weight and preponderance of the evidence. These points are sustained.

The test for determining whether a general employee of one employer becomes a special or borrowed employee of another employer involves the matter of the right of control of the manner in which the employee performs the services necessary to the accomplishment of the particular activity or service being performed by the employee at the time of his injury. If a general employee of one employer is placed under the control of another employer in the manner of performing his services he becomes such other employer's special or borrowed employee. The nature of the employment relationship is determined with reference to the particular action causing the injury. Producers Chemical Company v. McKay et al., 366 S.W.2d 220 (Tex.1963). J. A. Robinson Sons, Inc. v. Wigart, 431 S.W.2d 327 (Tex.1968). Hilgenberg et al. v. Elam, 145 Tex. 437, 198 S.W.2d 94 (1946). Steele v. Wells, 134 S.W.2d 377 (Tex.Civ.App.1939, writ ref.).

It is undisputed that the services which Warden was performing at the time of his death involved the transportation in interstate commerce of three loads of furniture which had been loaded in the state of Washington and were being carried to points in Texas and Alabama. The bills of lading reflecting this purpose of the trip were on Wheaton's forms. This particular activity of Warden and such services could be performed only by Wheaton under its permit from the Interstate Commerce Commission. The services being performed by Warden at the time of his death could not be performed by Security because Security had no interstate commerce permit. Its only connection with the activity involved was a single telephone call from Warden indicating that he was loaded and coming to Texas. There was no knowledge by Security as to where Warden had loaded in Washington or where he was going in Texas. Before leaving Washington with his load, dispatchers and agents of Wheaton had told Warden where and when to pick up the furniture in question and told him where and when to deliver the goods. Wheaton had furnished him the bills of lading for the loads, and Warden would not have known what to do without instructions from Wheaton's agents. The evidence is undisputed that Warden followed Wheaton's instructions on this particular haul and that he was under Wheaton's control insofar as the loads involved were concerned. Warden's pay for the haul was to be on a commission basis, that is, thirty-two percent (32%) of the haul. The above facts and circumstances, in our opinion, conclusively established that Warden was performing services for Wheaton at the time of his death and that he was then under Wheaton's control. Although Warden was a general employee of Anderson, the evidence showed conclusively that he was a borrowed employee of Wheaton who was directing and controlling the particular activity which resulted in his death. Traders & General Insurance Co. v. Frozen Food Express, 255 S.W.2d 378 (Tex. Civ.App.1953, writ ref., n. r. e.).

In addition to the above facts and circumstances, it is clear from the provisions of the lease agreement between Anderson

and Wheaton that Wheaton was to have the direction and control of, and the exclusive possession and use of Anderson's equipment in performing the type of services in which Warden was killed. It was provided in the lease that Security was required to furnish a driver to perform the services of transporting household goods, as therein provided under the direction and control of Wheaton, and that Wheaton had the right to hire and discharge the driver. The contract indicated that: the leased equipment of Security was to be used by Wheaton to perform only services which Wheaton could perform, but which Security could not perform; that a driver operating the equipment was required by the lease to be furnished to Wheaton by Security; that the driver was to operate the equipment for Wheaton and perform services for Wheaton who had the sole and exclusive control of such equipment performing its services with the ultimate right of hiring or discharging the drivers of the equipment. The record shows conclusively that Warden in performing the services in which he was engaged at the time he was killed was performing services which only Wheaton could perform and which Security could not perform, and that in performing such services Warden had received all of his instructions from Wheaton.

■ We cannot agree with appellees' contention that the testimony of Anderson and J. B. Cupp, admitted over objection, was admissible in support of the verdict and judgment. Such evidence was, in effect, the stated opinion of Anderson and Cupp that Wheaton could not hire or discharge drivers of equipment leased to it by Anderson and that Wheaton did not have the exclusive direction and control of such equipment at the time of Warden's death. This testimony was contrary to the provisions of the written contract between Anderson and Wheaton. It is not contended that there was a change of the original contract or a cancellation thereof. The introduction of such testimony was simply an attempt to vary the terms of the contract and the admission thereof was a violation of the parol evidence rule. The provisions of the lease agreement dealt directly with the right to control the manner of performing Wheaton's activity of hauling in interstate commerce. Anderson and Cupp were permitted to testify that paragraph 1 of the lease contract applied to the household goods being transported and not to the vehicles and that Wheaton did not have exclusive control and use of the vehicles under paragraph 15 because he could refuse loads if he wanted to and because paragraph 15 was intended merely as a safety measure to permit Wheaton's field man to pull the truck off the road if he saw it running with bad tires. In our opinion there was no ambiguity in the provision of the lease contract which would permit such interpretation. Appellant filed a motion in limine to exclude the testimony in question but the court denied the motion and over appellant's objection permitted the introduction of such testimony in the trial of the case. Appellant's points complaining of the action of the court in admitting such evidence and in considering same in support of the verdict and judgment are well taken. Wallrath v. Calvert, 442 S.W.2d 884 (Tex.Civ.App.1969, modified and affirmed 457 S.W.2d 376); Lewis v. East Texas Finance Company, 136 Tex. 149, 146 S.W.2d 977 (1941); Remington Rand, Inc. v. Sugarland Industries, 137 Tex. 409, 153 S.W.2d 477 (1941, opinion adopted by Supreme Court).

The judgment against United States Fire Insurance Company is reversed and the judgment is here rendered to the effect that Wheaton's insurer, Liberty Mutual Insurance Company, is liable for the workmen's compensation death benefits due and owing to the widow and children of Clarence Warden.