**Austin Anthony CARR, Appellant,**

v.

**The CARROLL COMPANY, Appellee.**

**No. 20778.**

Court of Appeals of Texas, Dallas.

Dec. 30, 1982.

Rehearing Denied Feb. 28, 1983.

Charles M. Wilson III, Carter, Jones, Magee, Rudberg, Moss & Mayes, John T. McCully, Christopher Payne, Vial, Hamilton, Koch, Tubb, Knox & Stradley, Dallas, for appellant.

Gordon H. Rowe, Jr., Gardere, Wynne & Jaffe, Dallas, for appellee.

Before GUITTARD, C.J., and SPARLING and VANCE, JJ.

VANCE, Justice.

The appellant, Austin Carr, brought suit against The Carroll Company, for damages by personal injury sustained as a result of negligence of one of Carroll's employees. A jury found that Carroll and Carr were each 50% negligent and that Carr was a borrowed employee of Carroll at the time of the injury. Since there was proof that Carroll was a subscriber to the Workers' Compensation Act, the trial court afforded Carroll the protection from common-law negligence provided by the Act by entering judgment that Carr take nothing. We affirm.

Carr was a general employee of Manpower, Inc., a supplier of temporary labor. Carr was assigned by Manpower on the day of the accident to work as a general laborer at Carroll's place of business. Carr spent the morning unloading trucks. After taking a lunch break he was told by one of Carroll's employees to ride on a forklift to another area of the warehouse. While riding on the front prong of the forklift, Carr fell and was pinned under the machine, sustaining injuries for which damages were

sought. Manpower's workers' compensation carrier paid compensation and intervened in this action seeking offset of such payment by any recovery against Carroll but does not now appeal the judgment of the trial court.

■ Carr first argues that the court erred in the submission of the issue based on the "borrowed employee" doctrine because the record is insufficient to support it. We disagree. The record reflects that Carr was an employee of Manpower temporarily performing services at the Carroll Company. Texas courts have long recognized that a general employee of one employer may become the borrowed servant of another. *Sparger v. Worley Hospital, Inc.*, 547 S.W.2d 582, 583 (Tex.1977); *J.A. Robinson Sons, Inc., v. Wigart*, 431 S.W.2d 327, 330 (Tex.1968).

This doctrine protects the employer who had the right of control from common-law liability. *Associated Indemnity Company v. Hartford Accident & Indemnity Company*, 524 S.W.2d 373, 376 (Tex.Civ.App.—Dallas 1975, no writ). The central inquiry becomes which employer had the right of control of the details and manner in which the employee performed the necessary services. This principle was explained by the Supreme Court in *Producers Chemical Company v. McKay*, 366 S.W.2d 220, 225 (Tex. 1963) as follows:

> If the general employees of one employer are placed under control of another employer in the manner of performing their services, they become his special or borrowed employees. If the employees remain under control of their general employers in the manner of performing their services, they remain employees of the general employer and he is liable for the consequences of their negligence.

■ Manpower had instructed Carr that he would work as a "pinch hitter" for different companies at the customer's place of business, though he still would be working for Manpower. The area manager for Manpower testified that in this specific instance on-the-job supervision of the temporary employee was up to the company where the employee performed his services. Mr. White, the supervisor of the front dock at the Carroll Company, confirmed that he had directed Carr in the details of his work on the day in question. Carr himself testified that the work he carried out at the Carroll Company was supervised by Carroll employees. Walter Wilson, in charge of truck loading at the Carroll Company on the day the accident occurred, testified that his immediate superior had told Wilson to put Carr to work repacking floor compound at a location 100 yards distant. Wilson stated that he had instructed Carr to get on the forklift to ride over there. This testimony that the Carroll Company, through its personnel, controlled the details and manner in which Carr was to perform his work was sufficient to support the submission of the borrowed servant issue.

Carr also contends that the court erred in submitting the borrowed servant issue because the definition in the charge was legally and factually insufficient. The definition contained in the charge read as follows:

> A "BORROWED EMPLOYEE" is one who, while in the general employment of one employer, is subject to the right of another employer, or his agents, to direct and control the details of the particular work inquired about, and is not merely cooperating with suggestions of such other employer. The fact that the general employer may have permitted a division of control over the employee does not necessarily mean that the general employer has surrendered the right of control.

In contrast, Carr requested an instruction stating that though an employee be loaned and subject to the direction of the temporary employer, no new employment relationship is established if in following the directions of the temporary employer, Carr was doing so merely in obedience to his general employer. On the facts of this case we disagree with Carr's formulation and find the case of *Hilgenberg v. Elam*, 145 Tex. 437, 198 S.W.2d 94 (Tex.1946) to be controlling. In that case, the lessee of a

tractor and bulldozer sublet this equipment to a farmer, complete with driver. In backing up to uproot trees, the tractor-bulldozer ran over the farmer. In holding that the driver was a borrowed employee, the Texas Supreme Court stated that an employee may become another's servant as to some acts but not as to others. *Hilgenberg, supra* at 96. The test appears to be " . . . whether in the performance of the wrongful *act* he continues liable to the direction and control of his general employer or becomes subject to that of the person to whom he is lent." *Id.* (Emphasis added). That court also considered the normal scope of the business of the general employer and that of the special employer. Having determined that the farmer, the sub-lessee of the equipment, had instructed the driver where to drive and to go backward as well as forward, and that the act was within the normal scope of the farmer's business, the court concluded that as to the fatal act Elam, the lessee, had no liability, for the driver was a "borrowed servant" of the farmer.

■ In the case before this court, Carr's instructions by Manpower were to perform whatever manual labor the Carroll Company directed him to do. The Carroll employees assigned him to unloading trucks and cleaning up, acts which may have been in obedience to the general instructions of Manpower, but were within the normal scope of Carroll's business and were supervised in their details by Carroll's employees. Clearly, Manpower did not direct Carr to perform the act in question, riding on a forklift to another location. Carr did so at the behest of Wilson, his immediate supervisor at the Carroll Company. With regard to the particular act concerned, riding the forklift, Carr was not acting "in obedience to the direction of and in performance of his duties to Manpower," as the instruction which appellant tendered suggests. This ground of error is overruled. *Hilgenberg, supra; Rector v. Walden, Fulton & Payne,* 276 S.W.2d 933 (Tex.Civ.App.—Amarillo 1954, writ ref'd n.r.e.).

■ Carr asserts further that the special issue asking whether Carr was a borrowed employee should have but did not require the jury to find that the employee had consented to or be charged with knowledge of the lending agreement. He raised this question by an objection to the charge as given and by requesting a special instruction, which the court refused.

In support appellant cites to us the case of *Guerrero v. Standard Alloys Manufacturing Company,* 566 S.W.2d 100 (Tex.Civ.App. —Beaumont 1978, writ ref'd n.r.e.), which appears to recognize the rule that the employee should consent to or be charged with knowledge of the lending agreement but does not hold that the jury should be so instructed. In that case the evidence showed that the general employer, Gutierrez, was on the job site several times a week, including the day of the accident, and just the previous day had met with his workers to tell them how " . . . to work faster and better." *Id.* at 102. The injured worker spoke no English, and the supervisors where he was working gave him no directions because they spoke no Spanish. The general employer allegedly informed the workers they "were working for him." *Id.* Evidence of such close supervision by the general employer is not present in the case at bar. Moreover, in this case Carr himself testified that he received instructions from employees of the Carroll Company.

The Court of Civil Appeals in *Guerrero* did make the statement that " . . . in order to establish an employer-employee relationship between an employee and a borrowing employer, the employee must know or be charged with knowledge of the lending agreement." *Guerrero, supra,* at 102. Even if we assume this to be a correct statement of the law, it does not affect our holding because the record demonstrates Carr's awareness that he would be loaned out by Manpower, a supplier of temporary workers, and Carr conceded that he was aware that Carroll Company personnel were to supervise his performance.

Neither *Guerrero* nor any other case cited to us holds that the jury must be instructed

that the knowledge or consent of the employee is necessary to a finding of borrowed employee. The Texas Supreme Court expressly stated in *Robinson, supra,* at 334 that the jury should not be instructed that the loaned employee must consent to control by the borrowing employer. That case, as the one at bar, involved a situation where there was no contract specifically allocating the right of control. *Id.* at 331. Likewise in *Producers Chemical, supra,* another case where there was no express contract, Chief Justice Calvert explained the factors to be considered, without mentioning the employee's knowledge or consent, as follows:

> When a contract, written or oral, between two employers expressly provides that one or the other shall have right of control, solution of the question is relatively simple. As examples, see *Magnolia Petroleum Co. v. Francis,* Tex.Civ.App., 169 S.W.2d 286, writ refused; *Steele v. Wells,* Tex.Civ.App., 134 S.W.2d 377, writ refused. It is when the contract between the employers is only implied or contains no provision for right of control that the problem becomes difficult. In such cases right of control is necessarily determined as an inference *from such facts and circumstances* as the nature of the general project, the nature of the work to be performed by the machinery and employees furnished, length of the special employment, the type of machinery furnished, acts representing an exercise of actual control, the right to substitute another operator of the machine, etc. *Producers, supra,* at 226. (Emphasis added).

We hold that the trial court did not err in overruling Carr's objection or in refusing to submit his requested instruction to the jury.

Carr also objects to the submission of the issues concerning contributory negligence and the percentage of negligence attributable to each party, arguing that the record is insufficient to support the submission of these issues. Having examined the record, we find that Carr admitted to having operated forklifts himself, that he knew from previous experience or had been told on other occasions not to ride on the prongs, and that supervisor Wilson told him to get on the forklift but did not tell him where to get on it. Clearly, the issue of contributory negligence was raised by this evidence. Having found in foregoing issues that Carr did not exercise ordinary care and that such action was the proximate cause of the accident, the jury properly considered the percentage of negligence attributable to each party. Such a determination was indispensable to resolution of the case.

The judgment of the trial court is affirmed.