Pamela MAYO, Individually and as Guardian and Next Friend of Jeremy Mayo, Appellant,

v.

SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY, Appellee.

No. 07–83–0341–CV.

Court of Appeals of Texas, Amarillo.

March 29, 1985.

Rehearing Denied April 16, 1985.

Barry L. Hart, Moore & Associates, P.C., Odessa, for appellant.

Cecil Kuhne, Crenshaw, Dupree & Milam, Lubbock, for appellee.

Before REYNOLDS, C.J., and COUNTISS and BOYD, JJ.

COUNTISS, Justice.

This is a workers' compensation case. Tex.Rev.Civ.Stat.Ann. arts. 8306 *et seq.* (Vernon 1967 & Supp.1985). The jury failed to find that Joe Mayo was an employee or borrowed employee of Lawrence Ward Trucking, Incorporated, an insured of appellee Southern Farm Bureau Casualty Insurance Company. That verdict is challenged in this Court by Mayo's widow, appellant Pamela Mayo, who advances three points of error. By the first two she contends her husband was Ward Trucking's employee as a matter of law because (1) the truck being driven by Mayo when he was fatally injured was operating under the trucking company's Railroad Commission permit and (2) the lease agreement under which the truck was operating expressly gave Ward Trucking the right of control over the vehicle and driver. By her third point, she contends the verdict is so against the great weight and preponderance of the evidence as to be manifestly unjust. We affirm.

The points of error require an analysis of the evidence. Thus, certain established principles are applicable to each point. Mrs. Mayo had the burden of convincing the jury by a preponderance of the evidence, *Industrial Indemnity Exchange v. Southard,* 138 Tex. 531, 160 S.W.2d 905 (1942) that Mayo was an employee of Ward Trucking. Tex.Rev.Civ.Stat.Ann. art. 8309 § 1 (Vernon 1967). When the jury answered the special issues "[h]e was not an employee" and "[h]e was not a borrowed employee," it was not finding those negatives as a fact; rather, it was failing to find the opposite, i.e., it was failing to find that Mayo was an employee or borrowed employee. The practical effect of that failure is to place a heavy burden on Mrs. Mayo, which she can discharge in two ways. First, she may convince us that she conclu-

sively proved her husband's status as an employee, a contention advanced by her first two points. The analysis to be applied to that contention when deciding whether the jury erred in failing to find the fact in question was stated in *Texas & N.O.R. Co. v. Burden*, 146 Tex. 109, 203 S.W.2d 522, 530 (1947):

> It is the province of the jury to decide the issues which are raised by conflicting evidence, but where there is evidence upon an issue and there is no evidence to the contrary, then the jury has not the right to disregard the undisputed evidence and decide such issue in accordance with their wishes.

Obviously that test requires us to review all of the evidence.

■ If Mrs. Mayo does not convince us that the jury ignored undisputed evidence and decided the case in accordance with their own wishes, she has one remaining option. She may convince us that the failure to find the facts she asserted was so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and unjust. *Parrish v. Hunt*, 160 Tex. 378, 331 S.W.2d 304, 306 (1960). We must also review all of the evidence in order to resolve that issue. *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973). *See generally*, Calvert *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 Texas L.Rev. 361, 364 (1960). Thus, a detailed statement of the evidence is appropriate and will follow our statement of the pertinent principles of workers' compensation law.

■ When applying the foregoing tests to the evidence, we must be alert to events that are important in deciding a person's status. The Workers' Compensation Act defines employee as "every person in the service of another under any contract of hire, expressed or implied, oral or written...." Tex.Rev.Civ.Stat.Ann. art. 8309 § 1 (Vernon 1967). Several factors are relevant in deciding the employment question, such as the right to hire and discharge the worker, the carrying of the worker on social security and income tax

withholding records, the providing of equipment, and the responsibility to pay wages. *United States Fidelity & Guaranty Co. v. Goodson*, 568 S.W.2d 443, 446 (Tex.Civ. App.—Texarkana 1978, writ ref'd n.r.e.). The ultimate test, however, is the right of the asserted employer to control the specifics of the worker's performance. *Anchor Casualty Company v. Hartsfield*, 390 S.W.2d 469, 471 (Tex.1965); *United States Fidelity and Guaranty Co. v. Goodson, supra* at 446. Absent an express contract, evidence of the exercise of control may be the best evidence available to demonstrate the actual terms of the contract, but the right, not its exercise, is the supreme test. *Newspapers, Inc. v. Love*, 380 S.W.2d 582, 590 (Tex.1964). *Dickerson v. I.N.A. of Texas*, 640 S.W.2d 81, 83 (Tex.App.—Amarillo 1982, no writ). We also note that the courts have consistently determined that remuneration is a necessary element of a contract of employment. *Tex. Emp. Ins. Ass'n v. Burrell*, 564 S.W.2d 133, 134 (Tex. Civ.App.—Beaumont 1978, writ ref'd n.r. e.). The tests outlined above also apply when deciding whether the worker is a borrowed employee. *United States Fire Insurance Company v. Warden*, 471 S.W.2d 425, 427 (Tex.Civ.App.—Eastland 1971, writ ref'd n.r.e.). Thus, we review the evidence.

Mayo died in a truck wreck. The truck he was driving was owned by W.R. Connally, who did not have a Railroad Commission permit or workers' compensation insurance, and was leased to Ward Trucking, which did have a Railroad Commission permit and workers' compensation insurance. As pertinent here, the lease stated:

3. Lessor [Connally] shall operate under the TEXAS RAILROAD COMMISSION rules and regulations.

5. During the term of this lease, lessee [Ward Trucking] will use the described vehicle for transportation under Permit # 32243.

6. Lessor agrees for lessee to bill all invoices.

7. Lessee shall retain 25% of gross receipts for services.

8. ALL ITEMS OR SERVICES CHARGED TO LESSEE BY LESSOR OR LESSOR'S DRIVERS WILL BE DEDUCTED FROM SETTLEMENT SHEET.

9. The parties agree and understand that LESSOR will at his own cost and expense maintain insurance covering loss and/or damage to the said equipment as a result of fire, theft, collision or for any other casualty resulting in the loss and/or damage thereto, it being understood and agreed by both parties that LESSEE shall never be liable to LESSOR for loss and/or damage to said equipment from any cause whatsoever, including the negligence of LESSEE, his agents or employees. Lessor must furnish lessee with verification of all insurance carried.

10. Lessee will not be responsible for FICA, withholding taxes, or Workmen's [sic] Compensation on lessor's drivers.

11. Lessor's drivers will be subject to lessee's rules and regulations.

The lease was filed with the Texas Department of Public Safety as required by Texas Revised Civil Statutes Annotated article 6701c–1 Section 2 (Vernon Supp.1985). It is apparent from the wording of the lease and from the evidence discussed below that one of the purposes of the lease arrangement was to provide Connally a Railroad Commission permit under which to operate his truck.

Mayo was driving for Connally when Connally leased his truck to Ward Trucking, and Mayo continued to drive the truck as he had in the past. Connally testified that he hired Mayo, that Mayo worked for him and that he established Mayo's salary. Although Connally did not give Ward Trucking express permission to fire Mayo, he was of the opinion that Ward Trucking could have terminated Mayo if so desired. Connally's testimony also revealed that Mayo received directions from Ward Trucking when driving the truck and that Mayo

was responsible for the maintenance of the truck.

In contrast to Connally's testimony, Lawrence Ward, sole stockholder of Ward Trucking Company testified that he could not have terminated Mayo, because Connally had hired him. Ward also said he couldn't require Mayo (1) to drive one of Ward Trucking's vehicles, (2) to purchase fuel at a designated place, or (3) to take a particular route in transporting cargo. He also pointed out that Mayo, and other lease drivers, were compensated on the basis of the number of loads transported, while his employees were paid a salary. Ward expressed his belief that Connally was carrying workers' compensation for Mayo, but said he would have carried it if Connally had asked him to do so.

There was also evidence that Ward Trucking employed a number of truck drivers who were paid salaries, had regular hours and transported grain and general commodities. When there were no commodities to transport, these salaried drivers were required to perform other tasks for the company. By contrast, Mayo, who had been a salaried driver for Ward Trucking before he quit and went to work for Connally, did not have regular hours, and did not report to Ward Trucking to perform other tasks if there was no cargo to transport.

At Connally's request, and contrary to the terms of the lease, Ward Trucking issued checks to Mayo, prepared his W-2 form, filed quarterly reports and carried him as its employee. In following the rules of Ward Trucking, Mayo was required to submit data regarding mileage, fuel usage, delivery and pick-up points, and the type of commodity transported. Also, consistent with the Railroad Commission permit, Mayo was restricted to certain routes.

■ Mrs. Mayo points to two specific events discussed above as support for her contention, in points one and two, that Mayo was, as a matter of law, Ward Trucking's employee. First, she says Mayo's operation of a leased truck under Ward

Trucking's Railroad Commission permit compels that conclusion. We rejected a similar argument in *Dickerson v. I.N.A. of Texas, supra,* where a similar lease arrangement was present, pointing out that the lease, workers' compensation statutes and Texas Revised Civil Statutes Annotated article 6701c–1 Section 2 (Vernon Supp. 1985), upon which appellant relies here, do not speak to or in any manner resolve the status of the driver of a leased vehicle. We believe *Dickerson* is correct and, following it, we overrule Mrs. Mayo's first point.

 By her second point, Mrs. Mayo contends the lease gave Ward Trucking so much control over Mayo that he was its employee as a matter of law. Although the lease certainly gave Ward Trucking the right to control certain aspects of the operation of the truck, we note that the lease also refers frequently to "Lessor's drivers," and places on Connally the responsibility for various activities related to his drivers. Thus, the lease, in isolation, is at best ambiguous on the matter and the jury's resolution of that ambiguity must prevail. Point of error two is overruled.

Under her final point, Mrs. Mayo points to the numerous instances where Ward Trucking could control some aspect of Mayo's activities and to the evidence that it issued checks to him, withheld taxes from his check and carried him as its employee on government reports, in support of her general argument that the verdict is clearly wrong and unjust. We observe, however, that there was evidence that: (1) Ward Trucking employed salaried drivers for its trucks; (2) Mayo was the driver of a leased truck and treated like other lease-drivers; (3) Mayo was not required to perform certain tasks or work designated hours as the salaried employees; (4) Mayo was hired by Connally; (5) Ward Trucking could not have terminated Mayo; (6) Mayo had control of his routes; (7) Mayo or Connally decided where to park the truck overnight, where it was repaired and where to purchase fuel; and (8) Connally established the amount of Mayo's earnings.

Thus, there was a factual dispute over the extent to which Ward Trucking could control Mayo and the jury resolved that dispute against Mrs. Mayo. We are powerless to change the result. *Burt v. Lochausen,* 151 Tex. 289, 249 S.W.2d 194, 199 (1952). Point of error three is overruled.

The judgment is affirmed.